Matt R. Kane and Sara E. Kane, et al. [1] v. Commissioner. Kane v. Commissioner
Docket Nos. 5593-66, 2169-67, 2174-67, 2175-67, 2187-67, 2304-67, 2363-67.
United States Tax Court
T.C. Memo 1971-221; 1971 Tax Ct. Memo LEXIS 111; 30 T.C.M. (CCH) 943; T.C.M. (RIA) 71221; August 31, 1971, filed. Jerome Kamerman, 500 5th Ave., New York, N. Y., for the petitioners. Nelson E. Shafer, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax in these consolidated cases for taxable years 1960, 1961 and 1962 as follows: Docket
Taxable
Petitioner
No.
Year
Deficiency
Zoe Drew
2363-67
1960
13,567.15
Matt R. Kane and Sara E. Kane
5593-66
1962
$ 767.25
Conway Import Co., Inc.
2169-67
1960
41,681.64
1961
41,848.04
1962
44,004.91
Joseph L. King and Eloise R. King
2174.67
1960
2,218.86
1961
3,777.88
1962
4,568.18
Robert F. Alm and Kathleen V. Alm
2175-67
1960
2,276.86
1961
2,341.76
1962
2,301.33
Willard F. Kiefer and Miriam L. Kiefer
2187-67
1960
$ 4,110.82
1961
3,696.10
1962
4,802.98
Irving I. Domash and Dorothy Domash
2304-67
1960
638.35
1961
2,595.71
1962
1,943.89
Joseph D. Drew and
1961
8,880.90
1962
10,134.46
*112 As to petitioner Conway Import Co., Inc; the Commissioner has added negligence penalties which are not at issue under section 6653(a), I.R.C. 1954, [2] in the following amounts: 944 Taxable
Year
Amount
1960
$2,084.08
1961
2,092.40
1962
2,200.25
Due to concessions by the Commissioner, the remaining issues for our decision are: 1. Whether petitioner, Conway Import Co., Inc., is entitled to deduct as "commissions and brokerage" the sums of $80,157, $79,802 and $79,925 in the years 1960, 1961 and 1962 respectively. 2. Whether Conway's salesmen, the individual petitioners herein, are chargeable with income in the years 1960, 1961 and 1962 with respect to "commissions and brokerage" payments given to them by their employer. 3. Whether Joseph D. Drew is chargeable with additional income in respect of specific deposits made in his bank account in the amounts of $3,440, $1,128.80 and $2,883 in the years 1960, 1961 and 1962 respectively. Findings of Fact Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated *113 herein by this reference. Petitioner Conway Import Co., Inc. (hereinafter Conway Chicago or petitioner) was incorporated under the laws of the State of Illinois in January 1946, and adopted the calendar year as the basis for reporting its income. The principal place of business of Conway Chicago, both when the petition herein was filed and during the years 1960, 1961 and 1962, was Chicago, Illinois. Its Federal income tax returns for the years in question were filed with the district director of internal revenue at Chicago, Illinois. Petitioners Matt R. and Sara E. Kane are husband and wife and at the time they filed their petition herein they resided in South Pasadena, California. They filed a joint Federal income tax return for the year 1962 with the district director of internal revenue, Los Angeles, California. Petitioners Joseph L. and Eloise R. King are husband and wife and at the time they filed their petition herein they resided in Winnetka, Illinois. They filed joint Federal income tax returns for the years 1960, 1961 and 1962 with the district director of internal revenue, Chicago, Illinois. Petitioners Robert F. and Kathleen V. Alm are husband and wife and at the *114 time they filed their petition herein they resided in Arlington Heights, Illinois. They filed joint Federal income tax returns for the years 1960, 1961 and 1962 with the district director of internal revenue, Chicago, Illinois. Petitioners Willard F. and Miriam L. Kiefer are husband and wife and at the time they filed their petition herein they resided in Cincinnati, Ohio. They filed joint Federal income tax returns for the years 1960, 1961 and 1962 with the district director of internal revenue, Cincinnati, Ohio. Petitioners Irving I. and Dorothy Domash are husband and wife and at the time they filed their petition herein they resided in Chicago, Illinois. They filed joint Federal income tax returns for the years 1960, 1961 and 1962 with the district director of internal revenue, Chicago, Illinois. Petitioners Joseph D. and Zoe Drew are husband and wife and at the time they filed their petition herein they resided in Highland Park, Illinois. They filed joint Federal income tax returns for the years 1960, 1961 and 1962 with the district director of internal revenue, Chicago, Illinois. During the years in question, Conway Chicago was engaged in the business of importing, manufacturing *115 and/or selling mayonnaise, dressings, olives and olive oil, and other condiments to or for hotels, restaurants, department stores and clubs (the so-called "institutional trade"). During each of the respective years in question, Kane, King, Alm, Kiefer, Domash and Drew were salesmen for Conway Chicago, each of whom covered different territories in Conway Chicago's area of operations. Drew [3] and Irving Domash were responsible for the overall operation of Conway Chicago, however Samuel Domash has been the managing executive since 1946. Conway Chicago's business was conducted in approximately 20-25 states throughout various parts of the Midwest, South, West and Southwestern portions of the country, including Louisiana, Michigan, Nebraska, Washington and Wisconsin. A New York corporation also known as Conway Import Co., Inc. (hereinafter 945 referred to as Conway New York), whose business activities for approximately fifty years parallel the business activities performed by Conway Chicago since 1946, serviced a small number of customers in Missouri through a warehouse *116 operation prior to 1946. Otherwise its territory has covered only the east coast, including New England, middle Atlantic and southern states, none of which was also covered by Conway Chicago since its formation. The stockholders and directors of Conway Chicago from 1946 through 1962 were Mrs. T. Heinemann, Mrs. E. Kay, both residing in Scarsdale, New York, and Mrs. E. Domash, a resident of Brooklyn, New York. Their husbands, A. P. Heinemann, Sidney Kay and Samuel Domash, were the stockholders and directors of Conway New York. The officers of the two companies were: Conway New York
Conway Chicago
President
A. P. Heinemann
(Mrs.) T. Heinemann
Vice President
Joseph Drew
Vice President
Irving Domash
Treasurer
Sidney Kay
(Mrs.) E. Kay
Secretary
Samuel Domash
(Mrs.) E. Domash
The accounting functions of Conway Chicago were under the direction of Irving Domash and, to a lesser extent, Joseph Drew. The normal accounting practice for handling Conway Chicago expenses (other than commission and brokerage) was as follows: A bill or voucher would be received from the supplier of goods and services; the bill would be paid by a check payable to a named *117 payee; and all pertinent records regarding the transactions would be retained in the company files. "Commission and brokerage" is the name given by Conway Chicago to sums of cash which it gave to its salesmen, to be distributed by them to employees of Conway Chicago's customers. Since its founding in 1921, Conway New York followed this practice. The original justification for the payments was that the stewards, chefs, and sous-chefs of Conway New York's customers came largely from France, Italy and Switzerland, where the practice of making gifts to such employees was general and where salaries were so low that the owners expected employees to supplement their income in this way. When salesmen were hired by petitioner, Drew and Irving Domash (hereinafter sometimes referred to as Irving) instructed them that it was company policy to pay gratuities to their customers' employees. Petitioner never entered into any agreement with any of the employees of its customers in which petitioner promised to give to such employees anything as a reward for or inducement to make purchases from petitioner, nor were such employees told they would receive such payments. For the years 1960-1962, Irving *118 was in charge of disbursing the funds to petitioner's salesmen, and the procedure followed by petitioner in disbursing gratuity funds to its salesmen in the years 1948 through 1962 was as follows: Irving prepared an itinerary for each salesman, listing the calls the salesman was to make during the following month. Using the itinerary list as a guide, Irving referred to the appropriate sales records and calculated the amount of commissions and brokerage to be paid to employees at each account. These amounts were transcribed on a commission and brokerage voucher, and Irving instructed the bookkeeper to issue a check for the total amount listed on the voucher. The check, after being signed by either Irving or Drew, was cashed by the bookkeeper at the company's bank and the currency was returned to Irving. After receiving the currency, Irving placed the currency in envelopes, sealed them and wrote on the flap of each envelope the name of the account and the position of the recipient or the recipient's name. Irving then mailed the envelopes to the salesmen covering the accounts, by registered mail. Petitioner's salesmen were to give the envelopes containing the cash to the employees *119 of the customers. Before giving the envelope to a recipient, the salesman was to remove the flap, and mail it to Irving. Irving checked each flap against the commission and brokerage vouchers, to insure that all moneys had been distributed. No receipts were secured from any recipients and Irving would destroy the flaps after approximately a two-month period. No other records of Conway Chicago were destroyed after a like two-month period. During the years 1960-1962, petitioner paid to its salesmen, for distribution to 946 employees of petitioner's customers, the following amounts of gratuities, listed on petitioner's books as commission and brokerage expense: 1960
1961
1962
Joseph D. Drew
$24,825
$18,496
$18,555
Joseph King
8,646
13,126
15,335
Robert Alm
8,632
8,748
8,241
Willard Kiefer
13,734
11,467
13,762
Frank Gulacy
17,208
14,887
12,483
Matt Kane
1,230
3,792
3,179
Peter Warren
3,580
2,985
Ralph DiTore
1,652
5,353
7,573
Irving I. Domash 650
795
797
$80,157
$79,802
$79,925 These amounts were supported by checks payable to cash, authorized by check vouchers. Domash, Drew, Kane, DiTore (a Conway Chicago salesman, *120 but not a petitioner herein), Kiefer, Alm and King had no record or recollection of the persons to whom the commission and brokerage were given. Not one of the salesmen who testified could identify any of the persons who supposedly received payments at establishments operated by their principal customers. Irving Domash could not and/or would not identify competitors of Conway Chicago, if any, who engage in the practice of paying gifts and gratuities similar to those at issue herein. He stated that he knew such payments were made as a "custom of the trade." The practice described was widespread in petitioner's industry. The employer of any recipient of a commission and brokerage payment was not informed that such payment had been made, and neither the recipient nor any Conway salesman was directed to inform the recipient's employer of such payment. Over the years, many of the alleged commission and brokerage payments were supposedly made to the same individuals, until they lost their job or died. If the intended recipient of a payment was no longer employed by a particular Conway Chicago customer, efforts were made to locate him to deliver the payment, but no such individual *121 could be identified. At times, people with whom Conway Chicago or Conway New York salesmen were dealing would open their own establishments. The company would thereafter sell to the establishments, and commission and brokerage payments would be paid to employees of said establishments. Commission and brokerage recipients who moved up in the ranks to executive positions did not continue receiving payments. However, none of these individuals could be identified. Petitioner's method of recording the gratuities on vouchers was copied from the practice of Conway New York. The Internal Revenue Service had examined Conway New York's tax return for 1947 with respect to commissions and brokerage. The result of this examination was to leave the claimed deduction substantially unaltered. The examination went to conference and to the chief conferee and the report was approved by the agent in charge of the Brooklyn division. Conway New York's practice with respect to recordkeeping was the same from 1947 through 1957. Revenue agents were shown, each year, the vouchers for the payments, which listed only the names of customers. The examining agents did not ask for the names of the ultimate *122 recipients at each customer to whom the salesmen distributed the cash. Sam Domash notified Drew of the outcome of the 1947 Internal Revenue Service review, which left the claimed deduction substantially unaltered. During 1949, Conway Chicago was also subject to an Internal Revenue Service examination for the years 1946-1948. The examination covered the commission and brokerage deduction of Conway Chicago. The only records shown to the Internal Revenue Service to substantiate the claimed commission and brokerage for the years 1946-1948 by Drew were the commission and brokerage vouchers listing names of customers, similar to those referred to previously. The Internal Revenue Service did not request the names of the ultimate recipients of the commission and brokerage. The result of this examination was to leave the claimed deduction substantially intact. During 1957, the Commissioner audited the income tax return filed by Conway Chicago for 1955. Although an adjustment was made to taxable income for that year, no part of the "Commissions and Brokerage" expense claimed as a deduction on the return was disallowed as an expense in the applicable examination report dated December 5, 1957. Drew *123 represented Conway Chicago at the 1955 audit and he exhibited commission and brokerage vouchers similar to those herein to substantiate the claimed commissions and brokerage. He 947 was not asked for the names of the ultimate recipients. During 1960, the Commissioner examined the tax returns of Conway Chicago for the years 1957, 1958 and 1959. On those tax returns, the expenses included "Commission and Brokerage." In a report of the audit dated November 1, 1960, no part of these expenses was disallowed, although other adjustments were made to the taxable income. Petitioner's commission and brokerage records and the substantiation thereof for the years 1960-1962 were kept in the same manner and reflected the same information as the records kept by petitioner since its inception. Petitioner's records of the commission and brokerage expenses were maintained in a specific and precise manner in reliance on the method of recordkeeping exhibited at the 1950 conference held to determine Conway New York's 1947 tax liability and the continued allowance of substantially all for Conway New York, and all, in petitioner's case, of the commission and brokerage expense for the years following *124 1947 for Conway New York, and 1948 for petitioner. The Commissioner disallowed petitioner's commission and brokerage for the years 1960, 1961 and 1962 in the amounts of $80,157, $79,802 and $79,925, respectively. The statutory notice mailed to the petitioner gave the following reason for such disallowance: It is determined that these alleged expenditures are not deductible, inasmuch as it has not been established that they constitute ordinary and necessary business expenses or that they were made for the purpose designated. Opinion We must decide three issues herein. First, whether petitioner, Conway Chicago, is entitled to deduct certain sums labeled "commissions and brokerage," as ordinary and necessary business expenses for 1960, 1961 and 1962. Second, whether the individual petitioners, certain of Conway Chicago's salesmen, are chargeable with additional income consisting of the commission and brokerage moneys given to them by Conway Chicago. Third, whether petitioner Drew is chargeable with additional income for 1960, 1961 and 1962 composed of certain deposits made to his bank account. Turning our attention first to the deduction claimed by Conway Chicago, petitioner *125 urges upon us the doctrine of collateral estoppel, based upon a decision of the United States District Court for the Eastern District of New York in Conway Import Co. v. United States, 311 F. Supp. 5 (E.D. N. Y. 1969), which found in favor of the taxpayer therein (Conway New York) on issues, for all practical purposes, identical to those presented herein. The Supreme Court in Commissioner v. Sunnen, 333 U.S. 591 (1948), articulated the requisite criteria for the application of collateral estoppel in income tax cases: The rule [res judicata] provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound * * *. Commissioner v. Sunnen, supra at 597. Collateral estoppel is a narrower application of res judicata, for whereas the latter bars the relitigating of matters which might have been determined as well as those actually determined, the former only bars those matters which were actually litigated and determined. Commissioner v. Sunnen, supra at 598. Further, even though the facts in the subsequent proceeding *126 are similar or identical, if they are separable from those in the first proceeding, collateral estoppel is not operative and the second tribunal is free to make is own independent inquiry into the matters before it and to reach its own decision. Commissioner v. Sunnen, supra at 601. Thus, with these basic principles set forth we shall undertake to decide if this case presents the proper setting for the application of the doctrine of collateral estoppel. Petitioner's position is that although Conway New York and Conway Chicago are two legally distinct entities, collateral estoppel nevertheless applies because the essential privity and mutuality (of interest) exists since the parties in control of the litigation who are interested in the outcome are the same in both instances. Petitioner stresses that to deny application of collateral estoppel herein on the basis that the two corporations are legally separate would be an overly technical application. With this we cannot agree. We have stated earlier that the issues presented here are for all practical purposes identical with those in the prior proceeding. 948 Our reason for rejecting petitioner's stand relates *127 to the identity of the parties and certain relevant facts here which we consider not identical to those in the first suit. Commissioner v. Sunnen, supra at 601. We are of the opinion that the requisite identity of parties is absent here due to the fact that each corporation is the creature of a different state, from which each derives a separate and distinct corporate character. Further, the fact that each corporation transacted its business over a totally independent geographic area is a factor which appears to us to be significant as it relates to the claimed trade custom and universality of the payments sought to be deducted herein. Further, the issue is raised as to whether or not the alleged payments are violative of public policy, which if found to be so would deny the deduction to petitioner. Since the question of public policy and a violation thereof differs from state to state, Conway Importing Co. v. United States, 311 F. Supp. 5, 10 (E.D. N. Y. 1969), applying collateral estoppel herein would, we feel, be an error. Therefore, we shall consider this case as any other and arrive at our own decision, whether it be consistent with or contrary to *128 that rendered in the prior proceeding. The Commissioner admits, as he has no other choice, that Conway Chicago did disburse the funds in question to its salesmen. However, he contends that they were not made for the purpose designated, i.e., as commissions and brokerage payments to customers. What this all reduces to is whether or not the payments were ordinary and necessary business expenditures, that is were they appropriate and helpful. Commissioner v. Tellier, 383 U.S. 687 (1966); Lilly v. Commissioner, 343 U.S. 90 (1952). The Commissioner's major contention is that the nature of these payments cannot be determined unless the recipients can be identified. Since none of the witnesses nor other evidence presented reveals this information, petitioner cannot take the deduction because it cannot be determined if they were necessary. We believe that the Commissioner asks too much. A review of the relevant portions of the record discloses that petitioner has shown, to our satisfaction, his right to the claimed deduction. Those portions reveal the following: Conway Chicago adopted the practice of Conway New York to make "commission and brokerage" payments *129 to employees of its customers, at a rate of 10 percent of sales. Irving Domash, the office manager of Conway Chicago, testified that he was in charge of the distribution of the commission and brokerage funds to the salesmen and that by using the salesmen's itinerary sheets and the company's sales records, he calculated the amount of cash to be drawn for commission and brokerage. After drawing a check and having it cashed, he segregated the currency for each account and specified the amounts for individual recipients by placing a certain amount of currency in a small envelope and writing the name of the recipient on the flap of the envelope. He then mailed a batch of envelopes to each salesman. The affidavits of Conway Chicago salesmen setting forth the amounts they received from Conway Chicago during 1960, 1961 and 1962, show, and as Irving testified, the salesmen of Conway Chicago received $80,157, $79,802 and $79,925 for the years 1960, 1961 and 1962, respectively, to be distributed as gifts and gratuities to employees of Conway Chicago's customers. These amounts were recorded on Conway Chicago's books and deducted on its tax returns for the years in question under the heading of *130 "Commission & Brokerage." Also, Conway Chicago salesmen testified at the trial that they did receive money from Conway Chicago to be distributed as commission and brokerage. Conway Chicago's salesmen were under instructions to distribute the envelopes containing the cash which they received from Irving, as gifts and gratuities to employees of customers at the accounts which they serviced. Each salesman, who is a petitioner in this action, testified that he distributed, as instructed, all the commission and brokerage moneys received from Conway Chicago. Management's testimony that they believed the salesmen were paying out the money received by them as commission and brokerage, since Irving regularly called on Conway customers with his salesmen and it would have been very apparent to him if the salesmen had not been performing their function of distributing the commission and brokerage, further indicates that payment was in fact made. There is much testimony as to the transitory nature of the recipients of these payments. This coupled with the number of accounts which each salesman serviced, 949 suffices to explain why the names of the recipients or the amounts given to each *131 would be impossible to remember years after the distribution, without a contemporaneous written record. Compounding the difficulty of identification is the fact that at each account, the salesman would be distributing money to more than one person, and, at any given time, hundreds of employees were being paid by each salesman. The facts as testified to by eight witnesses, are uncontroverted as to the purpose of Conway's payments to its salesmen. These payments were given with instructions that they be distributed as gifts and gratuities to employees of customers. The purpose of the payments was also plainly stated to the salesmen, and it was their responsibility to distribute the funds and the record reveals that they carried out their responsibility to its fullest extent. Conway Chicago's reasons for not retaining the envelope tabs are evident. Since this evidence is not available at this time, we must rely on the next best means for establishing the facts. We find the testimony adduced at trial to be wholly believable and credible and we hold that petitioner has satisfied its burden of proof as to the claimed deductions. The Commissioner next argues that if the commission and *132 brokerage payments are found to be otherwise allowable as deductions, they nevertheless must be disallowed because they are violative of public policy. With this we cannot agree. The Supreme Court has spoken on this subject. In Commissioner v. Tellier, 383 U.S. 687 (1966), the Court stated: Only where the allowance of a deduction would "frustrate sharply defined national or state policies proscribing particular types of conduct" have we upheld its disallowance. Commissioner v. Tellier, supra at 694. The public policy which would be frustrated by the allowance of a deduction must be clearly defined as evidenced by some form of state action. Coed Records, Inc., 47 T.C. 422 (1967); Paramount Finance Co. v. United States, 304 F. 2d 460 (Ct. Cl. 1962). As stated in Paramount Finance Co. v. United States, supra: The * * * case, and every case relied on by the defendant, contained an element lacking in the present action; i.e., a determination by the authority charged with the enforcement of the state or federal law or the carrying out of the public policy involved that the expense for the deduction sought was *133 incurred in violation of that law or well-defined public policy. Lacking any such determination, we are of the opinion that an allegation by the Internal Revenue Service that the expense was incurred in violation of a state statute is insufficient to disallow an otherwise proper deduction unless the expense occasioned an act malum in se. To permit the Internal Revenue Service to employ Federal tax law in an effort to enforce its concept of state law as the Service views it would be an unnecessary extension of its delegated authority, at the very best, and creates a disruptive atmosphere of interference by the Federal Government in an area traditionally reserved to the states. Paramount Finance Co. v. United States,supra at 463. Here we have no state action of the type required. In fact, the Commissioner's own survey, introduced in evidence herein, cites the fact that the practice followed by petitioner is quite widespread and despite this, there have not been any state prosecutions under any commercial bribery statute similar to the one in Illinois. We find the payments here to be normal, usual and customary for petitioner's type of business and not violative of *134 any sharply defined state policy as required which would bar their allowance as ordinary and necessary business expenses. We now turn our attention to the cases of the individual salesmen. The Commissioner's position is that they are taxable on the commission and brokerage payments as additional income under the broad sweep of section 61, since they cannot identify the recipients of these funds. We find ourselves unwilling to so hold. We think that in light of the testimony of the salesmen-petitioners that they paid over the funds as they were instructed to do and that they received no personal benefit therefrom, the result as requested by the Commissioner would be tantamount to charging them with embezzlement, a decision we are unable to make. We think that the salesmen's cases would have no doubt been stronger, if they had supplied the Commissioner with the names of the recipients so that he could verify the amounts, however, we feel that they have carried their burden as to whether such sums constituted additional income to them. Their testimony that they received no 950 benefit from the money turned over to them is unimpeached and, in our opinion credible. The last issue *135 herein relates to certain moneys deposited in the bank account of Joseph Drew in 1960, 1961 and 1962. The Commissioner determined that these amounts represented additional income. Petitioner contends that such amounts, $3,440, $1,128.80, [4] and $2,883, respectively, were loans; however, he could supply no details as to the purported loans. We are unable to find such amounts to be loans, due to lack of proof and accordingly hold in favor of the Commissioner on this issue. See Mills v. Commissioner, 399 F. 2d 744 (C.A. 10, 1968).
Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Conway Import Co., Inc., docket No. 2169-67; Joseph L. King and Eloise R. King, docket No. 2174-67; Robert F. Alm and Kathleen V. Alm, docket No. 2175-67; Willard F. Kiefer and Miriam L. Kiefer, docket No. 2187-67; Irving I. Domash and Dorothy Domash, docket No. 2304-67; and Joseph D. Drew and Zoe Drew, docket No. 2363-67.↩
2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
3. Reference to Mr. Zoll at Tr. 85, 1. 10 was an obvious error. Mr. Zoll was a Philadelphia revenue agent.↩
4. The Commissioner concedes that an item of $83.40 of this total is not taxable income.↩