SOPHIE BEDEIAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6073–66. Filed February 12, 1970.

*James B. McGrath*, for the petitioner.
*Roy S. Fischbeck*, for the respondent.

OPINION

The first issue is whether respondent was justified in employing the net worth increase plus nondeductible expenditures method to reconstruct petitioner's taxable income. We think he was. Since petitioner's income included a percentage of the profits of the tavern, and she maintained no adequate personal records, respondent could look beyond the Form W-2 furnished by her employer. See *Barry Meneguzzo*, 43 T.C. 824, 832 (1965). Her taxable income could be verified only by determining the amount of the tavern's profits paid to her; yet its records were incomplete and inconsistent. See *Holland* v. *United States*, 348 U.S. 121, 131–132 (1954); *Schwarzkopf* v. *Commissioner*, 246 F. 2d 731 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court. Finally, petitioner had no income from nontaxable sources during the years in question, and a probable taxable source of the unreported income—the tavern—existed. See *Holland* v. *United States, supra* at 137–138. The net worth method may properly be employed in these circumstances. *Bodoglau* v. *Commissioner*, 230 F. 2d 336 (C.A. 7, 1956), affirming 22 T.C. 912 (1954); *Morris Lipsitz*, 21 T.C. 917, 931 (1954), affd. 220 F. 2d 871 (C.A. 4, 1955), certiorari denied 350 U.S. 845 (1955).

Turning to the contested items in respondent's computations, there is no merit in petitioner's contention that the value of the Cadillac automobile acquired in 1960, used exclusively for nonbusiness purposes, should be reduced each year for depreciation. This argument misconceives the theory of the net worth method as a tax-measuring device. The term "net worth" in this context does not mean the economic affluence of the taxpayer, but instead means the difference, as of the end of the taxable year, between the value of his assets in terms of actual expenditures therefor and his liabilities. The reference is to the *tax basis* of an asset, not to its fluctuating market value. See 10 Mertens, Law of Federal Income Taxation, sec. 55.19, p. 116 (1964 ed.); Balter, Tax Fraud and Evasion 10.52–10.53 (3d ed. 1963). Thus, items such as depreciation—which affect value but entail no current outlay—are taken into account only if they are deductible; otherwise the "net worth increase" for each year, which is one of the components of adjusted gross income as computed by the method, would be reduced by an amount which could not be deducted in computing taxable income.[1]

---

[1] Alternatively, were the decline in value of a nondepreciable asset reflected in the computation of the assets, that same amount would have to be added to the "net worth increase" as a "nondeductible expenditure." The result would be the same as disregarding such diminution in value in initially computing the assets.

Consequently, the decrease in value during 1961 and 1962 of the automobile, for which a depreciation deduction was not allowable, has no relevance in determining petitioner's taxable income. See 30 J. Taxation 378, 379 (1969). While petitioner's "net worth" from an economic standpoint was no doubt affected by deterioration of the automobile, this was not so for purposes of a net worth computation. See *Holland* v. *United States, supra* at 125; *Schultz* v. *Commissioner*, 278 F. 2d 926, 932 (C.A. 5, 1960), remanding on other grounds 30 T.C. 256 (1958). *Lenske* v. *United States*, 383 F. 2d 20 (C.A. 9, 1967), on which petitioner relies, is distinguishable in that the property there involved was depreciable for tax purposes.

The next issue involves petitioner's claim that her note payable to Bettendorf Bank & Trust Co. should be shown as a liability as of December 31, 1962, in the amount of $1,702.68 rather than $1,516.63. As disclosed by our findings, the difference in these two sums represents the unpaid part of the discount and filing fee originally included in the principal amount of the note. Here, again, the theory of the net worth method must be borne in mind. The loan made available to petitioner only the net amount of the principal sum, not including the add-on obligations. Only such net amount was reflected in newly acquired assets. Repayments on the note will absorb an equal amount of assets, and included in the repayments will be a proportionate amount of deductible interest. See *John Randolph Hopkins*, 15 T.C. 160, 181 (1950); cf. *Bayou Verret Land Co.*, 52 T.C. 971, 985–986 (1969). But until the discount or other add-on obligation is actually paid or otherwise becomes deductible, it may not be taken into account in computing petitioner's net worth. See 30 J. Taxation 378, 380 (1969).

There remains the question concerning the $1,000 debt owed to Lou White at the close of 1962. The record relating to this item is not as complete as it might be, but we have found as a fact that petitioner borrowed the money and had not repaid it by the end of the year. Petitioner so testified, and there is no evidence to the contrary. While petitioner's testimony as to the manner in which the debt was repaid in 1963 is not consistent with the revenue agent's understanding of a May 1968 conversation with petitioner, we believe this inconsistency was due to petitioner's nervousness and lack of ability to articulate. There is no inconsistency as to the truly relevant fact—the existence of the debt as of December 31, 1962—or the fact that it was ultimately repaid.

*Decision will be entered under Rule 50.*