HARVEY and AUDREY THOMAS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thomas v. Commissioner
Docket No. 12904-78.
United States Tax Court
T.C. Memo 1984-72; 1984 Tax Ct. Memo LEXIS 605; 47 T.C.M. (CCH) 1091; T.C.M. (RIA) 84072; February 13, 1984. *605 Ps, husband and wife, were engaged in the trucking business during the years 1970 through 1974. They did not file returns for such years until Nov. 12, 1981, over 3 years after they commenced this case. They did not provide their books and records to the Commissioner during the audit. The Commissioner determined deficiencies in Ps' income taxes for each of the years in issue by using the net worth method. Held:
(1) The Commissioner's net worth determinations, as modified by his concessions and by this opinion, are sustained. (2) Ps are not liable for the addition to tax for fraud for any of the years in issue. Sec. 6653(b), I.R.C. 1954. (3) Ps are liable for the addition to tax for failure to file timely returns for each of the years in issue ( sec. 6651(a)(1), I.R.C. 1954), and Ps are also liable for the addition to tax for negligence ( sec. 6653(a), I.R.C. 1954), for 1970, 1972, 1973, and 1974. (4) Ps are liable for the additions to tax for underpayment of estimated tax ( sec. 6654(a), I.R.C. 1954) for 1970, 1972, 1973, and 1974. Joseph W. Weigel, for the petitioners. Joseph R. Peters, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Additions to tax
Sec. 6653(b)
Sec. 6654
Sec. 6651(a)
Sec. 6653(a)
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
1970
$18,089.43
$9,044.72
$578.86
$4,522.36
$904.47
1971
5,395.70
2,697.85
172.67
1,348.93
269.79
1972
20,000.35
10,000.18
640.00
5,000.09
1,000.02
1973
1,186.00
593.00
37.95
296.50
59.30
1974
2,396.05
1,198.00
76.67
599.01
119.80
After concessions by the Commissioner, the issues remaining for decision are: (1) *608 Whether the Commissioner properly determined the petitioners' income for the years 1970 through 1974 using the net worth method; (2) whether the petitioners are liable for the addition to tax for fraud for any of the years 1970 through 1974 (section 6653(b)) or, alternatively, for the additions to tax for failure to file timely returns (section 6651(a)) and for negligence (section 6653(a)) for any of the years 1970 through 1974; and (3) whether the petitioners are liable for the addition to tax for failure to pay estimated tax (section 6654) for any of the years 1970 through 1974. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Harvey and Audrey Thomas, who are husband and wife, resided at Knapp, Wis., when they filed the petition in this case. The petitioners filed late their joint Federal income tax returns for 1970 through 1974 with the District Director of Internal Revenue, Milwaukee, Wis. During the years in issue, the petitioners were engaged in the transportation of mobile homes to places in Wisconsin *609 and other States. Both Mr. and Mrs. Thomas were actively engaged in the management of their business. The petitioners operated their business through a corporation, Mobile Home Express, Inc. (the corporation), and a sole proprietorship known as Mobile Home Enterprises. The petitioners usually hired independent truckers to transport mobile homes, paying them a portion of the freight bill. Occasionally, Mr. Thomas transported mobile homes himself. The petitioners were insolvent throughout the years in issue. They were indebted to banks and other commercial lenders as well as to family members and friends. They used the proceeds of their loans to meet the operating expenses of the mobile home business and to repay prior obligations. A large portion of the petitioners' liabilities arose from their participation in an alleged check-kiting scheme which occurred in late 1969. The petitioners incurred debts of approximately $90,000 as a result of such scheme. The petitioners used the check proceeds to pay business operating expenses, and the banks involved agreed to treat as business loans the amounts owed them as a result of such scheme. On March 29, 1973, Mrs. Thomas was convicted *610 of mail fraud (18 U.S.C. sec. 1341 (1970)) for her participation in the check scheme on a plea of nolo contendere; the indictment against Mr. Thomas was dismissed. The petitioners filed no income tax returns for the years in issue until more than 3 years after they commenced the present case. During the Commissioner's investigation of the petitioners' tax liabilities, Revenue Agent Anthony Schillinger met with the petitioners at their offices. Agent Schillinger asked Mrs. Thomas for the books and records of the mobile home business. She asserted her Fifth amendment privilege against self-incrimination and declined to produce any records. In 1978, during a second meeting with the petitioners, Agent Schillinger disclosed his net worth computation of the petitioners' income. The petitioners disputed some of the computations orally, but they did not present their own computations, nor did they produce documents to sustain their claims. Later in 1978, the Commissioner's agents met again with the petitioners, who again declined to produce any records. The parties were unable to settle the case, and the Commissioner issued duplicate notices of deficiency *611 to Mr. and Mrs. Thomas on August 28, 1978. On November 12, 1981, the petitioners filed returns for each of the years in issue. On each return, they reported a loss; hence, they showed no tax due.Sometime after the Commissioner received the returns, Revenue Agent Richard Allen Siebenaller met with the petitioners to review the returns. Agent Siebenaller did not discuss the net worth computations with the petitioners, nor did the petitioners produce any evidence concerning their income. They did produce cancelled checks sufficient to substantiate the expenses deducted on their returns, but Agent Siebenaller was unable to determine the correctness of the amounts of gross income which they reported. In the absence of the petitioners' business records, the Commissioner, in his notices of deficiency, determined the petitioners' income using the net worth method. To the increase in the petitioners' net worth as determined for each year, he added personal living, interest, and legal expenses. He subtracted the nontaxable portion of a long-term capital gain that the petitioners realized in 1972. The Commissioner also allowed each petitioner the standard deduction and one personal *612 exemption for 1970, 1971, 1972, and 1974, but he included no such allowances for 1973. At the trial, the petitioners produced their own net worth computations and supporting documentation, and in light of such evidence, the Commissioner made several adjustments to his net worth computations. The parties have now agreed to many of the items contained in the Commissioner's net worth computations. The remainder of our findings of fact will treat only those items remaining in dispute. As to the dates of acquisition and value of the petitioners' assets, the petitioners acquired real property known as lot 7, located in Kronenwetter, Wis., by deed dated March 10, 1970. They received the lot in partial exchange for a mobile home. They had a swimming pool built at their residence during 1969. They acquired all the stock of Mobile Home Express, Inc., for $17,500 during 1970. Prior to the years in issue, they disposed of a Topper mobile home No. 2543. On November 3, 1969, the petitioners purchased eight snowmobiles for $535.00 each and two snowmobiles for $606.60 each. At the same time, they also purchased two snowmobile trailers at a total cost of $283. On November 21, 1969, the petitioners *613 pledged nine of the snowmobiles to River Valley State Bank as security for the debt arising from the petitioners' alleged check-kiting activities. At the end of November 1969, the bank sold four of the snowmobiles. During 1971, the bank disposed of the remaining five snowmobiles. As to the amount of the petitioners' personal expenses, two checks, written on their account at the First American National Bank, payable to "Johnny's Transport," for $79.70 and $34.85, are not includable in the petitioners' 1970 personal living expenses. The following payments represent interest on the petitioners' business loans: First National
Bank of New
Rollohome
Thorp
River Valley
Year
Richmond
Corp.
Finance
State Bank
1970
$403.40
1971
500.00
1972
3,000.00
$118.48
$7,365.82
1973
13.84
$14.84
As to the amount of the capital gain realized by the petitioners, during 1972, they sold a lot containing a mobile home for a stated price of $12,500. They received $8,000 and a second mobile home in payment. Their adjusted basis in the lot and mobile home was $11,550. The petitioners sold the second mobile home for $3,500. In his notices of deficiency, *614 the Commissioner concluded that the petitioners received unreported income reflected in increases in their net worth during the years in issue. He determined that a portion of the underpayment of tax for each year was due to fraud and that the petitioners were also liable for the additions to tax under section 6654 for failure to pay estimated tax. In his answer, the Commissioner also asserted the additions to tax provided by section 6651(a) for failure to file timely returns and section 6653(a) for negligence as an alternative to the additions to tax for fraud. OPINION The first issue for decision is whether the Commissioner properly determined the petitioners' income for the years 1970 through 1974 using the net worth method. The petitioners contend that the Commissioner's use of the net worth method to determine their income was arbitrary and unreasonable and that therefore the burden of proving the amounts of any deficiencies is on the Commissioner. See Helvering v. Taylor,293 U.S. 507 (1935). They assert that the many concessions made by the Commissioner reflect the erroneous nature of the computations. The petitioners' contention is without merit. *615 They filed no returns for the years in issue until after they commenced the present case. Although they orally disputed some of the Commissioner's computations during the audit, they did not produce any documentation to support their disputes with the Commissioner's net worth statement, nor did they produce their own net worth schedules until the trial. The Commissioner's use of the net worth method to prove the petitioners' income was proper. See Holland v. United States,348 U.S. 121 (1954); Bedeian v. Commissioner,54 T.C. 295 (1970). The petitioners bear the burden of proving that the Commissioner's determinations are incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure[2]; Welch v. Helvering,290 U.S. 111 (1933). The Commissioner's concessions regarding certain items in the net worth computation do not shift the burden of going forward with the evidence to him as to the items not conceded; it merely relieves the petitioners of a portion of their burden of proof. Mills v. Commissioner,399 F.2d 744, 749 (4th Cir. 1968), *616 affg. a Memorandum Opinion of this Court; Estate of Mason v. Commissioner,64 T.C. 651, 659 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Gobins v. Commissioner,18 T.C. 1159, 1168-1169 (1952), affd. per curiam 217 F.2d 952 (9th Cir. 1954). The parties have agreed to many of the items in the Commissioner's net worth schedule, as modified. Therefore, we now discuss only those items remaining in dispute. The petitioners contend that the statement of their assets at the end of 1969 should be increased to reflect a swimming pool and a parcel of land which they assert they acquired during 1969. The Commissioner contends that the petitioners acquired both assets during 1970. Neither party could document his contentions regarding the pool. Mrs. Thomas testified that it was installed during 1969. The Commissioner's agent testified that his determination that the pool was installed during 1970 was based on an increase in the assessed value of the petitioners' property which occurred in 1971. Mrs. Thomas's credibility on this issue was not *617 impeached, and the Commissioner's determination is highly speculative. Accordingly, we conclude that the pool was installed during 1969. Mrs. Thomas testified that the realty known as lot 7 was taken in trade for a mobile home in September 1969. The petitioners produced to evidence to document the date the exchange occurred. The deed transferring lot 7 to the petitioners was dated March 10, 1970, and they have failed to prove that lot 7 was acquired prior to such date. Accordingly, we sustain the Commissioner's determination that the petitioners acquired lot 7 during 1970. The petitioners contend that the stock in Mobile Home Express, Inc., which they acquired in 1970, should be valued at $7,000, while the Commissioner argues that the petitioners paid $17,500 for it. The sale contract specified that all the shares of the corporation were sold for $17,500. The corporation owned several assets, including three trucks, which passed to the petitioners as a result of the sale. The petitioners claim that they sold such trucks to provide $10,500 of the purchase price, so that they ended up with stock for which they paid $7,000 of their own money. The petitioners' claim is *618 not supported by any of the documents relating to the stock sale. The contract did not mention that the purchase was to be financed in part by the purchaser's sale of corporate assets. A letter from the seller made no mention of such an arrangement. Finally, the Commissioner's analysis of the source of the funds used to pay for the stock indicated that such funds came from business receipts deposited to the petitioners' account at the First American bank, and not from the sale of corporate assets. Accordingly, we sustain the Commissioner's determination with respect to the issue. The petitioners claim that they owned a Topper mobile home, No. 2543, worth $6,200 on December 31, 1969. The Commissioner claims that the petitioners disposed of the home during 1969. To support her testimony, Mrs. Thomas produced a check, dated April 21, 1969, for $9,790, payable to Hilton Homes, Inc. The check bears the notation that it was in full payment for the Topper home and partial payment for two other items, but there is reason to wonder whether the notation was made at the time of the check or later. Even though the Commissioner did not document his determination that the petitioners *619 disposed of the Topper mobile home during 1969, we do not believe that the petitioners' evidence suffices to disprove the Commissioner's determination. Even if the check to Hilton Homes was in payment for the Topper mobile home, it does not substantiate the petitioners' claim that they owned the home on December 31, 1969, especially in view of their practice of buying and selling several mobile homes. The Commissioner contends that the petitioners owned five snowmobiles, valued at $535 each, and two snowmobile trailers, valued at $283, at the end of 1969 and 1970. The petitioners claim that the snowmobiles and trailers should be valued at $3,751 and that such items were disposed of during 1970. We have found as a fact that the five snowmobiles retained by the petitioners at the end of 1969 were disposed of by the River Valley State Bank during 1971. However, we are unable to determine whether such snowmobiles included the two which cost $606.60 each. Since the petitioners have not carried their burden of proving that the Commissioner's determination regarding the snowmobiles is erroneous, we sustain the Commissioner on this issue. In his net worth computations, the Commissioner *620 did not increase the petitioners' liabilities by amounts representing interest on the petitioners' outstanding loans which accrued but was not paid during the years in issue. The petitioners argue that such amounts represent increased liabilities which must be accounted for in the net worth computations. The petitioners' contention is incorrect.They were cash method taxpayers during the years in issue.If there is no offsetting increase in assets represented by the increased liabilities attributable to the accrued but unpaid interest on outstanding loans, such interest is not includable as a liability on the net worth statement of a cash method taxpayer. See generally Estate of Upshaw v. Commissioner,416 F.2d 737, 743 (7th Cir. 1969), affg. a Memorandum Opinion of this Court; Scanlon v. United States,223 F.2d 382, 389 (1st Cir. 1955); Bedeian v. Commissioner,54 T.C. at 300. Mrs. Thomas testified that the petitioners received a $10,000 loan from her father in the fall of 1972 and that such loan was used to cover the petitioners' operating *621 expenses. They claim that their liabilities for 1972, 1973, and 1974 should be increased to reflect the loan. The only document which the petitioners produced to support the loan was a loan ledger sheet supposedly signed when the petitioners were leaving on a trip "so that if we both got killed in an automobile accident," her father could prove the debt. Mrs. Thomas did not testify when the sheet was prepared, but the sheet states that the loan was made during December 1970. When asked about the discrepancy between her claim and the date on the ledger sheet, Mrs. Thomas testified that the correct date was December 1970. In view of Mrs. Thomas's confusion as to the date the loan was made, and the dubious evidentiary value of the ledger sheet, we conclude that the petitioners have failed to prove that there was a loan, and we sustain the Commissioner's determination regarding it. The amount of the petitioners' personal living expenses for 1970 remains in dispute. The Commissioner has conceded that for 1971, such amount should be reduced to $9,802.37, while Mrs. Thomas testified that her computation resulted in a figure of $9,837.05. We accept the Commissioner's determination. *622 The petitioners have not challenged the Commissioner's determination of their personal living expenses for 1972, 1973, and 1974. The Commissioner based his determination of the petitioners' personal living expenses for 1970 on the amount of withdrawals from a bank account. At trial, the petitioners presented checks drawn on such account which they claimed represented business, not personal, payments. Two such checks were payable to an organization known as Johnny's Transport and apparently represent payments made in the course of the petitioners' transportation business. Consequently, we conclude that such checks do not represent personal expenses, but otherwise, we find that the withdrawals were used for personal expenses. The petitioners also contend that they grew their own vegetables during the years in issue and that they received gifts of personal consumption items, including half a steer each Christmas, from family members. They claim that the Commissioner's determination of their personal living expenses should be reduced to account for the home grown vegetables and the gifts. However, the petitioners have not proved the value of the home grown vegetables or the gifts, *623 nor the extent to which such items were consumed during 1970, the only year for which the petitioners' personal living expenses remain in dispute. Under such circumstances, the Commissioner's determination of the petitioners' personal living expenses, except as modified above, is sustained. The Commissioner has determined that the payments listed below were for interest on personal loans. The petitioners contend that such payments represent interest on business loans: Year
Payment
Creditor
1970
$126.80
Cloverbelt Credit Union
loan No. 4095C
403.40
First National Bank of
New Richmond
1971
111.29
Cloverbelt Credit Union
loan No. 4095C
500.00
First National Bank of
New Richmond
1972
27.39
Cloverbelt Credit Union
loan No. 4095C
118.48
Rollohome Corp.
7,365.82
River Valley State Bank
3,000.00
First National Bank of
New Richmond
1973
14.84
Thorp Finance
13.84
Rollohome Corp.
900.56
General Electric Credit
Corp.
1974
618.08
General Electric Credit
Corp.
The ledger sheet for the Cloverbelt Credit Union loan No. 4095C indicates that such loan was used to finance the purchase of a lot, *624 a refrigerator, and a gas range. The interest payments on such loan are clearly not business expenses. We are unable to determine whether the petitioners used the proceeds of the loan from the General Electric Credit Corp. for business or personal purposes. Accordingly, we must sustain the Commissioner's determination that the interest payments on such loan were personal expenditures. The loans from Thorp Finance were used to finance the purchase of large quantities of tires, tubes, and rims. Since the petitioners were in the trucking business, we may reasonably infer that such purchases were for business purposes; thus, we hold that the interest payments on such loans were business expenditures. Likewise, the loan from Rollohome Corp. was apparently used to cover business freight charges; accordingly, we hold that the interest payments to Rollohome Corp. were business payments. The petitioners' debts to the River Valley State Bank and to the First National Bank of New Richmond resulted from their check-kiting activities during 1969. The petitioners used the proceeds of such activities in their business, and the amounts were treated as business loans. Accordingly, we *625 conclude that the interest paid by the petitioners on account of such loans was a business expense.
The final dispute regarding the net worth analysis involves the amount of the capital gain which the petitioners realized on their sale of a lot and mobile home during 1972. The difference in the parties' computations is wholly attributable to their different computations of depreciation allowed on the lot and mobile home prior to the sale. The Commissioner has not explained his figure; the petitioners' computation is taken from a depreciation schedule prepared by the Commissioner and appears to be correct. Hence, we accept the petitioners' depreciation computation. Thus, the petitioners realized a gain of $950 on the sale, half of which is a nontaxable receipt. Sec. 1202. However, the petitioners are not entitled to offset such gain against the loss subsequently realized on the sale of the mobile home taken in trade. The original transaction was closed and completed, and gain was realized upon it prior to the subsequent sale of the mobile home taken in trade. Sec. 451. Since the petitioners had filed no returns for the years in issue at the time the Commissioner issued the *626 notices of deficiency, the Commissioner attributed the petitioners' total income to each petitioner in a separate notice. The Commissioner determined the deficiencies using the rates for married persons filing separately. At trial, the parties stipulated that any deficiencies should be attributed 75 percent to Mr. Thomas and 25 percent to Mrs. Thomas. On the returns subsequently filed by the petitioners for the years in issue, the petitioners stated that they were cash method taxpayers, and the Commissioner does not dispute their choice of accounting method. The petitioners elected to file such returns jointly, but the Commissioner claims such election is improper. The Commissioner is correct; the petitioners may not claim joint filing status for the years in issue since the petitioners did not file timely returns. Sec. 6013(b)(2)(B); Durovic v. Commissioner,54 T.C. 1364, 1401-1402 (1970), affd. on this issue 487 F.2d 36 (7th Cir. 1973). The second issue for decision is whether the petitioners are liable for the addition to tax for fraud for any of the taxable years in issue. [3]Sec. 6653(b). *627 In order to sustain the addition for a taxable year, the Commissioner must prove, by clear and convincing evidence, that the petitioners underpaid their tax for such year and that some portion of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b); Levinson v. United States,496 F.2d 651 (3d Cir. 1974); Miller v. Commissioner,51 T.C. 915, 918 (1969). The Commissioner will carry his burden if he shows that the taxpayer intended to evade taxes which he knew or believed that he owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107 (1956). *628 The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed ( Beaver v. Commissioner,55 T.C. 85, 92 (1970)), but fraud may be proved by circumstantial evidence since direct proof of the taxpayer's intent is rarely available ( Powell v. Granquist,252 F.2d 56, 61 (9th Cir. 1958); Gajewski v. Commissioner,67 T.C. at 200). The Commissioner contends that the entire record demonstrates the petitioners' fraudulent course of conduct. He points out that the petitioners did not file returns for the years in issue until after they commenced the present case and that they did not produce their books or records or their own net worth computations until the trial of this case. As evidence of fraud, the Commissioner also relies upon several inconsistencies in the petitioners' testimony.
While the failure to file returns and the failure to cooperate with the examining agents may evidence an intent to conceal income ( Stoltzfus v. United States,supra; *629 Beaver v. Commissioner,supra), such facts are not conclusive proof of fraud. [4] Mrs. Thomas testified that the petitioners did not file returns for the years in issue because they feared that doing so might somehow prejudice them in the civil and criminal litigation arising from the check-kiting transactions. She also testified that the attorney who represented them in the check litigation advised them not to file returns for the years in issue. We are not convinced that an attorney actually advised them not to file tax returns; nevertheless, we are satisfied that they were in trouble and confused, and we accept the testimony that the failure to file returns was not done deliberately to conceal income and to evade the payment of taxes. When the Commissioner's agents requested the petitioners' books and records, the petitioners asserted their Fifth amendment privilege against self-incrimination. We need not decide whether the petitioners had a right to claim the privilege, but they were investigated criminally by the Commissioner. The Commissioner has not proved that the *630 petitioners claimed the privilege to conceal fraud or mislead the Commissioner. Additionally, the petitioners did cooperate with the Commissioner's investigation to some extent. They met with the Commissioner's agents three times prior to the issuance of the statutory notices. On one occasion, they examined the Commissioner's net worth statement and voiced their objections to several items. At a meeting which occurred after the issuance of the statutory notices, the petitioners were able to substantiate the expenditures that they had claimed on the returns filed by them after they commenced this case. The Commissioner's proof of fraud consists primarily of his attempts to discredit the petitioners' explanations for their failure timely to file returns or to produce their books and records. The Commissioner also observes that both petitioners have had "adverse brushes with the law" and that their statements of financial position on loan applications during the years in issue may have been less than truthful. The latter two observations are of dubious relevance to the resolution of the fraud issue. We need not belabor the relatively minor inconsistencies in the petitioners' *631 testimony which the Commissioner relies on to discredit their story. Suffice it to say that the Commissioner has not shown the petitioners' testimony to be generally unworthy of belief. The burden upon the Commissioner in fraud cases is a heavy one; he may not substitute suspicion and speculation for evidence. In our judgment, the Commissioner has failed to prove that the petitioners fraudulently underpaid their taxes for any of the years in issue. The third issue for decision is whether the petitioners are liable for the additions to tax for failure to file timely returns (section 6651(a)(1)) and for negligence (section 6653(a)). The Commissioner concedes that he bears the burden of proof regarding these additions since he did not claim such additions until pleaded in his answer. Rule 142(a); Achiro v. Commissioner,77 T.C. 881, 889-891 (1981). The petitioners admit that they were required to file returns for 1970 through 1974. Indeed, they did file returns for such years in November 1981. Accordingly, they are liable for the addition to tax for late filing *632 (section 6651(a)(1)) if the Commissioner can prove that their tardiness was not due to reasonable cause. Sec. 301.6651-1(c), Procedure and Administration Regs. Reasonable cause may exist if a taxpayer reasonably relies on the advice of a competent tax expert ( Coldwater Seafood Corp. v. Commissioner,69 T.C. 966 (1978); West Coast Ice Co. v. Commissioner,49 T.C. 345 (1968)), but where the advisor is clearly incompetent or the advice clearly erroneous, reliance on such advice may be unreasonable (see Clark v. Commissioner,253 F.2d 745, 751 (3d Cir. 1958), affg. on this issue a Memorandum Opinion of this Court; Irby v. Commissioner,30 T.C. 1166, 1176 (1958), affd. per curiam 274 F.2d 208 (5th Cir. 1960); cf. United States v. Farber,630 F.2d 569, 572 (8th Cir. 1980); Coldwater Seafood Corp. v. Commissioner,supra at 974). [5]
Mrs. Thomas admitted that the petitioners failed to file returns because they feared that doing so might prejudice them in the check-kiting litigation *633 and because their attorney in that litigation advised them that since they had so many other problems "let's not worry ourselves with the tax problems right now." We are not wholly convinced that an attorney gave such advice. However, if he did, such advice was unquestionably wrong, and any reliance that the petitioners placed on it was unreasonable. Irby v. Commissioner,supra.Taxpayers who deliberately fail to file returns must use reasonable care to ascertain that no returns were necessary. Beck Chemical Equipment Corp. v. Commissioner,27 T.C. 840, 860 (1957). The petitioners failed to exercise such care. Accordingly, we conclude that the Commissioner has proved that the petitioners' failure timely to file returns for the years in issue was not due to reasonable cause. The petitioners are liable for the addition to tax pursuant to section 6651(a)(1). The proof supporting our determination that the petitioners lacked reasonable cause for their late filing also supports our determination that the petitioners were negligent within the meaning *634 of section 6653(a). See Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 740 (1973). However, with respect to the addition to tax for negligence, the existence of an underpayment of tax for each year must be proved. Sec. 6653(a). As in fraud cases, the existence of an underpayment is not proved, when the burden of proof is on the Commissioner, by the petitioners' failure to disprove the correctness of the determinations contained in the notice of deficiency. See Otsuki v. Commissioner,53 T.C. 96, 106 (1969); Pigman v. Commissioner,31 T.C. 356, 370 (1958). We conclude that the Commissioner has affirmatively proved the existence of an underpayment for 1970, 1972, 1973, and 1974. The Commissioner proved from the date of the deed to lot 7 that the petitioners acquired it during 1970. The Commissioner proved from the purchase contract that the petitioners acquired the Mobile Home Express, Inc., stock for $17,500. Finally, the Commissioner proved from bank records that the petitioners' snowmobiles were not disposed of until 1971. *635 Thus, the petitioners' net worth during 1970 was at least $14,858 more than the amount the petitioners listed on the 1970 schedule. Addition of such amount to the adjusted gross income shown on the petitioners' own net worth statement reveals that the petitioners had taxable income and a tax liability. Likewise, we have affirmatively found that Mrs. Thomas's father did not loan the petitioners $10,000, and thus, the petitioners' net worth for 1972, 1973, and 1974 is at least $10,000 greater than the amounts listed on their own schedule. Such inclusion results in a tax liability for each of such years according to the petitioners' own computations. Since the petitioners paid no tax, there is an underpayment for 1970, 1972, 1973, and 1974, and the petitioners are liable for the addition to tax for negligence for such years. Sec. 6653(a). Our findings respecting 1971 were primarily based on the petitioners' failure of proof, and therefore we do not sustain the imposition of the addition to tax for negligence for that year. The final issue for decision is whether the petitioners are liable for the addition to tax for failure to pay estimated taxes for the years 1970 through 1974. *636 Sec. 6654. The petitioners bear the burden of disproving the correctness of the Commissioner's determination regarding this issue.Rule 142(a). Reasonable cause is no defense to the addition to tax for underestimation. Sec. 1.6654-1 (a)(1), Income Tax Regs.; Estate of Hays v. Commissioner,27 T.C. 358, 361 (1956). The petitioners have not paid any tax for the years in issue, and they have not shown the applicability of any of the exceptions to the liability for the payment of estimated taxes. Accordingly, we sustain the Commissioner's determination on this issue with respect to the years 1970, 1972, 1973, and 1974. However, we observe from the Commissioner's net worth schedule, as modified, that the petitioners' tax liability for 1971 is close to zero when the petitioners' personal exemptions for such year are taken into account. We conclude that there was no underpayment of estimated tax for 1971. Sec. 6654(b); sec. 1.6654-1(a)(1), Income Tax Regs.
Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
3. The petitioners were both involved in the management of the business, and no party to this case has asserted that only one of the petitioners harbored the mental state necessary to support an addition to tax under secs. 6651(a)(1), 6653(a), or 6653(b)↩. Our discussion of such additions to tax will consider both petitioners together.
4. See, e.g., Gower v. Commissioner,T.C. Memo. 1982-72↩.
5. See also Hoffman v. Commissioner,T.C. Memo. 1982-380↩.