JOSEPH A. BONACCI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bonacci v. Commissioner
Docket No. 42883-85.
United States Tax Court
T.C. Memo 1989-289; 1989 Tax Ct. Memo LEXIS 289; 57 T.C.M. (CCH) 701; T.C.M. (RIA) 89289; June 14, 1989. Joseph A. Bonacci, pro se. Mark H. Howard and Thomas N. Thompson, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies and additions to tax in petitioner's Federal income tax liability for the years 1979 through 1984, as follows: Additions to Tax, I.R.C. Secs. [1]
Year
Deficiencies
6653(b)
6653(b)(1)
6653(b)(2)
1979
$  11,032 *
1980
14,223 *
1981
12,854 *
1982
14,998 * **
1983
58,517 * **
1984
46,947
-
--
Total
$ 158,571
*290 The issues for decision are: (1) Whether respondent based his determinations on information obtained in violation of Rule 6(e) of Federal Rules of Criminal Procedure, and if so the effect of such a violation on respondent's determinations; (2) whether respondent's computations of petitioner's taxable income under the net worth method of proof are correct; and (3) whether petitioner is liable for additions to tax under sections 6653(b), (b)(1), and (b)(2). FINDINGS OF FACT Some of the facts have been stipulated and are so found, and some of the facts have been established by requests for admission. Petitioner resided in Salt Lake City, Utah, at the time he filed his petition in this case. During the years 1979 through 1984, petitioner owned an automobile body shop and real estate. Between 1983 and June of 1985, an organized crime drug enforcement task force investigated petitioner's activities. The task force consisted of representatives from the FBI, the IRS, the DEA, and other state and local agencies. The drug enforcement task force presented their information to a grand jury in June of 1985. The grand jury indicted petitioner *291 on June 27, 1985. A U.S. Magistrate issued a search warrant on July 1, 1985, authorizing a search of petitioner's home and safe-deposit box. In support of the search warrant, two affidavits were submitted to the magistrate, one of which was prepared by an IRS special agent. Neither of the affidavits was based on information presented to the grand jury. Each affidavit was based on information obtained by the drug enforcement task force before the grand jury proceedings were conducted. On July 1 and 2, 1985, the search warrant was executed. Business and financial records of petitioner and contraband were seized. Among the records seized from petitioner's home were documents reflecting computations of petitioner's net worth and petitioner's Federal income tax liability for the years 1979 through 1984. These computations had been prepared by petitioner's then attorney from documents petitioner had made available to the attorney. Also, $ 53,000 in cash was seized from petitioner's safe-deposit box. The business and financial records of petitioner that were seized on July 1 and 2, 1985, were made available to respondent's agents. The computations of petitioner's net worth that *292 had been obtained through the search and seizure of petitioner's residence reflected taxable income and tax liability figures as follows: Year
Taxable Income
Tax Liability
1979
$  33,029
$   8,635
1980
72,714
29,694
1981
63,524
23,968
1982
21,295
3,819
1983
63,215
19,509
1984
103,848
37,497
Total
$ 357,625
$ 123,122
On July 8, 1985, respondent mailed a notice of jeopardy assessment for the years 1979 through 1984 to petitioner. On July 10, 1985, apparently based on the contraband seized from petitioner's home, a second grand jury indictment was obtained against petitioner. Both indictments accused petitioner of engaging in the illegal possession and distribution of drugs. On January 9, 1986, petitioner pled guilty to four counts of the two indictments, including two counts pertaining to the illegal possession and distribution of drugs. After the guilty pleas were entered, and after copies of the seized documents were made by respondent's agents, FBI agents gave to petitioner's daughter the records seized from petitioner's home. Petitioner did not file timely *293 Federal income tax returns for the years in dispute. In 1984, at petitioner's request, an accountant prepared Federal income tax returns for petitioner for the years 1979 through 1982. Petitioner did not give the accountant any original books and records to use in the preparation of the returns. Rather, petitioner merely gave the accountant summary sheets that petitioner had prepared reflecting his purported income and deductions for each year. Petitioner never filed with respondent the returns prepared for him by the accountant for the years 1979 through 1982, and those returns are not in evidence. In 1984, petitioner paid $ 8,500 to respondent as a partial payment on his Federal income tax liability. On August 15, 1985, petitioner filed with respondent a Federal individual income tax return for 1984, reflecting taxable income of $ 98,350 and a tax liability of $ 41,381. On September 4, 1985, respondent mailed to petitioner a statutory notice of deficiency for the years 1979 through 1984. Respondent used the net worth method of computing income in determining petitioner's tax liability. In the notice, respondent determined that petitioner had total taxable income for each *294 year as follows: Year
Taxable Income
1979
$  36,890
1980
39,915
1981
44,873
1982
49,774
1983
132,411
1984
193,243
Total
$ 497,106
For petitioner's opening net worth as of December 31, 1978, respondent used in his computations the $ 147,436 opening net worth figure reflected in the net worth computations that had been prepared by petitioner's attorney. Additional information used by respondent in making his net worth computations included documents pertaining to petitioner's purchase and sale of automobiles, real estate, and certificates of deposit. In his petition filed in this case in 1985, petitioner contested only a relatively small portion of the tax deficiencies determined by respondent, as indicated below: Tax
Portion
Portion Not
Year
Deficiencies
Contested
Contested
1979
$  11,032
$  9,098
$   1,934
1980
14,223
4,348
9,875
1981
12,854
650
12,204
1982
14,998
-0- 14,998
1983
58,517
9,619
48,898
1984
46,947
5,566
41,381
Total
$ 158,571
$ 29,281
$ 129,290
*295 In November of 1986, after this case was initiated, petitioner submitted to respondent's trial counsel returns for each of the years in dispute except for 1980. Petitioner at that time also submitted a second tax return for 1984. These returns, apparently prepared by petitioner himself, reflected the following total taxable income and tax liability figures: Year
Taxable Income
Tax Liability
1979
$  19,514
$  5,080
1981
37,140
13,083
1982
12,523
4,794
1983
77,256
32,372
1984
34,439
11,907
Total
$ 180,872
$ 67,236
Although the above returns reflected a total amount for itemized deductions on each return, no listing or schedule of the nature or amount of the specific deductions was included with the returns. In 1979, petitioner purchased a new Ferrari for $ 46,433 (paying approximately $ 23,000 in cash). During 1983 and 1984, petitioner purchased a number of cashier's checks and certificates of deposit, a new Maserati for $ 28,470 (paying $ 11,000 in cash), and a new Bayliner boat, motor, and trailer for $ 20,252 (paying $ 1,000 in cash). After trial, and based on certain evidence *296 admitted at trial, respondent made revisions to his net worth computations of petitioner's taxable income and to his determinations of petitioner's tax liability for the years at issue. Set forth below are the figures for petitioner's taxable income and tax deficiencies as revised by respondent after trial: Revised Taxable
Revised Tax
Year
Income
Deficiencies
1979
$   3,212
$     723
1980
64,526
28,892
1981
47,479
19,234
1982
72,301
30,497
1983
131,230
58,426
1984
161,557
31,604
Total
$ 480,305
$ 169,376
Respondent was allowed under Rule 41(b)(2) to amend his answer to assert the revised tax deficiencies. OPINION Alleged Violation of Rule 6(e) of Federal Rules of Criminal Procedure
Rule 6(e) of Federal Rules of Criminal Procedure provides for the secrecy of grand jury proceedings. Absent a disclosure order from the Federal District Court supervising the grand jury, this rule, in general, prohibits disclosure to IRS personnel for use in civil tax examinations of information *297 obtained by or through grand jury proceedings. United States v. Baggot,463 U.S. 476 (1983); United States v. Sells Engineering, Inc.,463 U.S. 418 (1983); Hajecate v. Commissioner,90 T.C. 280 (1988). In Anaya v. United States,815 F.2d 1373, 1378-1379 (10th Cir. 1987), the Tenth Circuit recently explained that -- It cannot be overemphasized that the purpose for grand jury secrecy is to protect the sanctity of the proceeding and to protect the participants from detrimental publicity. Rule 6(e) is not intended to deter the government from a legitimate investigation, so long as that investigation does not reveal what took place in the grand jury room.* * * [Citations omitted.] In this case, there has been no showing that respondent's agents were given access to grand jury information in violation of Rule 6(e) of Federal Rules of Criminal Procedure. Respondent's original deficiency determinations were based on information and documents that had been obtained either before the grand jury proceeding was conducted and independently of that proceeding, or after the grand *298 jury had returned the first indictment and as a result of a search warrant issued by a U.S. magistrate. As explained, in United States v. Interstate Dress Carriers, Inc.,280 F.2d 52, 54 (2d Cir. 1960) -- it is not the purpose of [Rule 6(e)] to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury. Thus, when testimony or data is sought for its own sake -- for its intrinsic value in the furtherance of a lawful investigation -- rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury. * * * We hold for respondent on this issue. Petitioner's Taxable Income
Respondent's authority to use the net worth method of proof to reconstruct a taxpayer's taxable income and Federal income tax liability is well established and is particularly appropriate where the taxpayer has not filed tax returns and did not maintain adequate books and records. Holland v. United States,348 U.S. 121 (1954); *299 Tunnell v. Commissioner,74 T.C. 44, 50 (1980), affd. 663 F.2d 527 (5th Cir. 1981). The computation of petitioner's taxable income for each of the years in dispute has been made difficult by petitioner's failure to file timely Federal income tax returns, by petitioner's failure to keep complete and organized records, by petitioner's failure to reflect in the tax returns he filed shortly before this case went to trial (and in other documents he submitted into evidence) his income from various real estate transactions and his income from the illegal distribution of drugs. Under these circumstances, respondent appropriately used the net worth method of proof to determine petitioner's taxable income. Respondent's net worth computations, particularly the $ 147,436 figure used for petitioner's opening net worth as of December 31, 1978 (which includes $ 10,000 of cash), are corroborated by the net worth computations prepared by petitioner's attorney and that were obtained as part of the July 1 and 2, 1985, seizure of petitioner's records. Respondent's computations also are supported by the implicit admission to their accuracy that was made in the petition *300 which contested only a relatively small portion of respondent's determinations concerning his income and his tax liability. Petitioner now alleges that his opening net worth as of January 1, 1979, was $ 304,000, of which $ 100,000 consisted of a cash hoard he and his family had accumulated over many years. The evidence is inconsistent, unclear, and not credible concerning petitioner's ownership of the alleged $ 100,000 cash hoard. To the contrary, the $ 147,436 opening net worth figure used by respondent accurately reflects the reliable evidence before us in this regard. Petitioner has two additional major disputes with respondent's net worth computations: (1) Whether, in the computation of petitioner's opening net worth as of December 31, 1978, petitioner's "cost" for the assets should be used, rather than the "fair market value" of the assets, and (2) whether depreciation deductions on certain assets should be allowed in the years 1979 through 1984. The law is clear that cost minus related liabilities, not the fair market value of assets, is to be used in establishing the relevant opening net worth. As the First Circuit recently explained -- The Government makes out a prima *301 facie case under the net worth method of proof if it establishes the defendant's opening net worth (computed as assets at cost basis less liabilities) with reasonable certainty and then shows increases in his net worth for each year in question which, added to his nondeductible expenditures and excluding his known nontaxable receipts for the year, exceed his reported taxable income by a substantial amount. * * * [United States v. Sorrentino,726 F.2d 876, 879 (1st Cir. 1984).] Petitioner cites some language from Cefalu v. Commissioner,276 F.2d 122, 126 (5th Cir. 1960), that could be read to suggest that the current value, not the original cost, of assets is to be used in establishing an opening net worth. When, however, the facts of Cefalu are examined, it is clear that the court, in using the term "current value," was making reference to the depreciated cost of the assets which was less than the taxpayer's original cost. The opinion does not stand for the proposition argued by petitioner (namely, that assets will be included in net worth computations at their current fair market value where such value exceeds the taxpayer's original cost). *302 With regard to respondent's failure to allow depreciation deductions on petitioner's assets, respondent acknowledges that depreciation may be taken into account in net worth computations where the assets are shown to be qualified for depreciation, citing Bedeian v. Commissioner,54 T.C. 295 (1970). That opinion explained that -- items such as depreciation -- which affect value but entail no current outlay -- are taken into account only if they are deductible; otherwise the "net worth increase" for each year, which is one of the components of adjusted gross income as computed by the method, would be reduced by an amount which could not be deducted in computing taxable income. [54 T.C. at 299.] In this case, petitioner has not submitted any credible evidence as to the business use of any of his assets, nor has he submitted any evidence as to the useful lives of the assets, both of which must be established before deductions for depreciation can be allowed. Petitioner raises a number of other arguments pertaining to respondent's computations of his taxable income and tax liability, pertaining to this Court's jurisdiction, and pertaining to respondent's *303 failure to call a witness. Petitioner's arguments on these points are either erroneous as a matter of law, factually unsupported, or do not affect the outcome of this case. We reject petitioner's additional arguments. For the reasons explained, respondent's computations of petitioner's taxable income and Federal income tax liability for the years in dispute are sustained. Respondent has, however, two sets of computations before us. With regard to respondent's amendment to his answer in which he alleges revised net worth computations to conform to the evidence, we have less confidence in the evidence and in respondent's revised computations than does respondent. Much of the evidence and explanations offered at trial -- on which respondent's revised computations are based -- were incomplete and insufficiently documented. We therefore reject the revised computations and sustain respondent's original net worth computations. We conclude that petitioner's taxable income for each of the years before us is as follows: Taxable
Year
Income
1979
$  36,890
1980
39,915
1981
44,873
1982
49,774
1983
132,411
1984
193,243
Total
$ 497,106
*304 Additions to tax: 1979-1983
Under section 6653(b), where any part of an underpayment of tax is attributable to fraud, an addition to tax of 50 per cent of the total underpayment is added to the underpayment. Ruidoso Racing Association, Inc. v. Commissioner,476 F.2d 502, 505 (10th Cir. 1973). Under section 6653(b)(2), as in effect in 1982 and 1983, a 50-percent increase in the otherwise applicable interest rate is applicable to that portion of the underpayment attributable to fraud. Civil tax fraud is defined as an intentional wrongdoing with the specific intent to evade a tax believed to be owed. Conforte v. Commissioner,692 F.2d 587, 592 (9th Cir. 1982), affg. in part and revg. and remanding in part 74 T.C. 1160 (1980); Davis v. Commissioner,184 F.2d 86, 87 (10th Cir. 1950). The existence of fraud is a question of fact to be determined from the entire record. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980); Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud will never be presumed, and respondent must prove fraud by clear and convincing evidence. Sec. 7456; *305 Rule 142(b); United States v. Thompson,279 F.2d 165, 167 (10th Cir. 1960); Beaver v. Commissioner,55 T.C. 85, 92 (1970). Direct evidence of intent to evade one's tax liability is usually not available, and "its proof may depend to some extent upon circumstantial evidence, and may rest upon reasonable inferences properly drawn from the evidence of record." Stone v. Commissioner,56 T.C. 213, 224 (1971). Whether fraud exists raises a factual question with respect to which respondent has the burden of proof by clear and convincing evidence. Sec. 7454(a); Rule 142(b). The evidence before us is clear and convincing that petitioner intentionally underpaid his Federal income taxes for the years 1979 through 1983. He failed to keep and/or to provide adequate financial records to his accountant, his attorney, respondent, and this Court. The additional records provided at trial were not provided on a timely basis to respondent. Petitioner failed to timely file tax returns, and in the tax returns petitioner filed shortly before the trial, petitioner admitted substantial taxable income not previously reported by petitioner (although the *306 tax returns continued to reflect substantial understatements of petitioner's correct taxable income both as determined by petitioner's attorney and as determined herein). We conclude that petitioner is liable for the additions to tax determined by respondent for each of the years 1979 through 1983. The additions to tax under section 6653(b)(2) for 1982 and 1983 are to be computed on the basis of the entire underpayment. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the tax deficiencies to be determined. ** 50 percent of the interest due on the portion of the tax deficiencies determined to be attributable to fraud.↩