**Hugh N. MILLS and Jane W. Mills, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 11825.

United States Court of Appeals Fourth Circuit.

Argued March 7, 1968.

Decided Sept. 3, 1968.

Arthur T. Ciccarello, Charleston, W. Va., for petitioners.

Karl Schmeidler, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, on brief), for respondent.

Before BOREMAN and BUTZNER, Circuit Judges, and RUSSELL, District Judge.

BUTZNER, Circuit Judge:

Hugh N. Mills and Jane W. Mills[1] seek review of a decision of the tax court which found a deficiency in their 1961 income tax.[2] Two issues are involved. The first is whether the tax court correctly held that the taxpayer realized ordinary income, and not long-term capital gain, on the sale of stock options and stock. The second issue is whether $1,450 of unexplained bank deposits should be included in the taxpayer's income. On both issues we affirm the tax court's decision for the commissioner.

### I.

The taxpayer organized Mountaineer Fire & Casualty Insurance Company in 1957, but he was unable to raise the necessary capital and surplus to obtain a license. The taxpayer controlled the corporation. He was its president but received no salary. Early in 1959 the board of directors increased the authorized capital of the company, fixed the issuing price of stock at $2.50 per share, and granted the taxpayer an option to buy 60,000 shares at $1.00 per share. The agreement granting the option recited that it was in consideration of the benefits the company would realize from the services of the taxpayer and also in consideration of his present employment and probable continued employment as president. The taxpayer agreed to assign some of his options, at no profit to himself, to associates who undertook to promote the sale of the company's stock. However, the promotion failed. The taxpayer made no assignments and cancelled the agreement.

In 1961 the taxpayer exercised options for 550 shares of stock, which he simultaneously sold for $1,250 at a profit of $700. He assigned an additional 1,000 options for $1,000. On January 21, 1961, the taxpayer, having been appointed Insurance Commissioner of West Virginia and desiring to divest himself of all connections with Mountaineer, sold his interest in the corporation for $8,750. He testified that the sale included his options.[3] The taxpayer reported the total sales price of all these transactions as $10,450, which he treated as a long-term capital gain without deduction for any cost.

In June 1961 the taxpayer, no longer the West Virginia Insurance Commissioner, agreed to operate the company if sufficient capital could be raised to obtain a license. Certificates of stock aggregating 30,400 shares were issued to him, which he immediately endorsed in blank and delivered to Alex Dandy.[4] The taxpayer gave his check for $34,000 payable to Mountaineer. Dandy later gave the taxpayer a cashier's check for $31,000, which the taxpayer deposited with $3,000 in currency to cover the $34,000 check he had given the company.

---

1. Mrs. Mills had no income. She is a party only because she and her husband filed a joint return. Hugh N. Mills will be referred to as the taxpayer.

2. Hugh N. Mills ¶ 67,067 P-H Memo TC. The case is not officially reported.

3. For some reason that does not clearly appear in the record, the taxpayer was able to exercise options when he again became connected with the company later in 1961.

4. 4,000 shares were a reissue. The rest were new.

In September 1961 the taxpayer paid Dandy $8,000 for 8,000 shares of Mountaineer stock valued at $20,000. At that time the stock was selling at $2.50 a share.[5] In explanation of his transaction with Dandy, the taxpayer testified that in June 1961 when the stock was issued in his name and assigned to Dandy, he acted as a fiduciary and that Dandy was the true owner of the stock. He explained that Dandy sold him 8,000 shares in September because Dandy previously had promised to do so. He admitted that the transaction had involved his stock options, but he denied that he had exercised any options except as an agent or conduit. The taxpayer did not report either his assignment of the stock to Dandy or his subsequent acquisition of the 8,000 shares.

The tax court held that the taxpayer realized $12,000 profit from the exercise or sale of options which enabled him to acquire stock worth $20,000 at a cost of only $8,000. The tax court reasoned that Dandy was able to purchase stock from the company at $1.00 per share only because the taxpayer either exercised or assigned his options to Dandy. This transaction, the court found, was coupled with the understanding that Dandy would turn 8,000 shares over to the taxpayer when he was able to pay the cost of the stock.

The tax court also held that the options granted to the taxpayer were compensation and that the profit he realized from all transactions connected with the options was taxable as ordinary income under § 61 of the Internal Revenue Code of 1954 [26 U.S.C. § 61]. The tax court's decision embraced both the transactions totaling $10,450 and the transfers involving Dandy resulting in the $12,000 profit. The taxpayer challenges the tax court's conclusion. He denies that the options were compensation and contends that Mountaineer granted the options to enable him and other promoters to have a proprietary interest in the company. He argues that they were capital assets in his hands and are taxable only as long-term capital gains.[6]

■■ The tax court properly rejected the taxpayer's theory. The agreement between the taxpayer and the corporation expressly recites that the options were granted in consideration of past and future services. Furthermore, in Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 247, 76 S.Ct. 800, 803, 100 L.Ed. 1142 (1956), the Court found no statutory basis for applying the proprietary interest doctrine to employees' options and held, "When assets are transferred by an employer to secure better services they are plainly compensation. It makes no difference that the compensation is paid in stock rather than in money." See 2 Mertens, Law of Federal Income Taxation § 11.11 (1967 ed.)[7] When the options were granted in 1959 they had no ascertainable market value. For this reason the taxpayer received the taxable income in 1961 when he exercised or transferred the options. Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 248, 76 S.Ct. 800, 100 L.Ed. 1142 (1956); Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 89 L.Ed. 830 (1945); Rank v. United States, 345 F.2d 337, 343 (5th Cir. 1965); Treas.Reg. § 1.421–6 [26 C.F.R. § 1.421–6]; see 2

---

5. During September 1961 the taxpayer himself sold 1,100 shares at $2.50 per share. Seven hundred of these were sold to Dandy.

6. The taxpayer does not contend that the options should be treated as restricted stock options under § 421 of the Internal Revenue Code of 1954, which was in effect at the time. In 1964, § 421 was replaced by new §§ 421–425 [26 U.S.C. §§ 421–425] providing for special treatment of qualified and restricted stock options.

7. Dicta found in pre-LoBue cases cited by the taxpayer are no longer applicable E. g., Connolly's Estate v. Commissioner, 135 F.2d 64, 67, 146 A.L.R. 1387 (6th Cir. 1943); Hawke v. Commissioner of Internal Revenue, 109 F.2d 946, 950 (9th Cir.), cert. denied, Hawke v. Helvering, 311 U.S. 657, 61 S.Ct. 11, 85 L.Ed. 421 (1940).

Mertens, Law of Federal Income Taxation § 11.11 (1967 ed.)

■ In view of the fact that the options were compensatory, the taxpayer can find no support in section 1234 of the Internal Revenue Code of 1954 [26 U.S.C. § 1234]. This section allows capital gains treatment of certain options, but it does not apply to gains attributable to nonrestrictive compensatory stock options.

■ The taxpayer also contends that he is not liable for any deficiency with respect to the transaction with Dandy because of a variance between the commissioner's statutory notice and the theory upon which the case was tried before the tax court. We find no merit in this contention. The statutory notice referred to "profit from sale of options and stock." The agent's work sheet furnished the taxpayer, at his counsel's request, dealt with the Dandy transaction in terms of the taxpayer's assignment of the stock to Dandy in June 1961. Before the tax court hearing, however, the taxpayer's counsel was fully apprised that the commissioner alternatively claimed the taxpayer realized a profit, not on the original assignment to Dandy, but as a result of the reassignment from Dandy to the taxpayer. At the hearing the taxpayer moved that the burden of proof of this part of the assessment should be shifted to the commissioner because of the variance from the statutory notice. The court made no specific ruling on this motion, but its decision on this phase of the case was not based on the taxpayer's failure to sustain the burden of proof. Even if the burden of proof had been placed upon the commissioner, we would be compelled to affirm. The historical facts were not in dispute, and the court accepted as the market value of Mountaineer stock the price at which the taxpayer sold other shares of the same stock the same month. Cf. Spangler v. Commissioner of Internal Revenue, 278 F.2d 665, 669 (4th Cir.), cert. denied, 364 U.S. 825, 81 S.Ct. 63, 5 L.Ed.2d 54 (1960).

■ In this court the taxpayer argued that not only should the burden of proof have shifted, but that the variance was fatal. The taxpayer urges that he is being taxed for the purchase of stock instead of the sale of stock as set forth in the statutory notice. This argument is based on an oversimplification of the problem. What the taxpayer considers a purchase was not an arm's length deal between vendor and vendee. The tax court carefully pointed out that the tax was imposed on this transaction because the taxpayer exercised or assigned 8,000 options to permit Dandy to buy the stock with the understanding that Dandy would turn this stock over to the taxpayer. The taxpayer was able to realize his gain on this transaction through the exercise or sale of his options. The statutory notice was sufficiently broad to encompass this theory. Cf. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1938); Bryan v. Commissioner of Internal Revenue, 281 F.2d 238, 243 (4th Cir. 1960), cert. denied, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364 (1961); Coastal Oil Storage Co. v. Commissioner of Internal Revenue, 242 F.2d 396, 400 (4th Cir. 1957).

A contrary conclusion is not required by Helvering v. Tex-Penn Co., 300 U.S. 481, 497, 57 S.Ct. 569, 81 L.Ed. 755 (1937), upon which the taxpayer relies. In that case the commissioner advanced a new theory in the Supreme Court. Not only did the notice of deficiency fail to suggest the commissioner's new position, but as the Court pointed out, it was not presented to the courts below or in the petition for certiorari. Here, however, the commissioner's alternative theory, ultimately accepted by the tax court, was made known to the petitioner before trial and was fully developed in the tax court.

## II.

Initially the commissioner increased the taxpayer's income by $2,612.15 found in unexplained bank deposits. By stipulation before trial the commissioner conceded the sum of $962.15 of the de-

posits was not income, and the taxpayer conceded that $100 was income. The taxpayer testified that the remaining $1,550 consisted of cash loans. The tax court held that $100 could be traced to a loan, but that the taxpayer failed to carry his burden of proof with respect to the remaining $1,450.

A witness, Brown, testified that he had lent the taxpayer between $3,000 and $4,000 during the year, usually by check, but in one or two instances in cash. He also stated that the taxpayer had lent him $1,000 early in the year, which he repaid in cash. The tax court found that Brown apparently lent the taxpayer money during the year, but the loans did not find their way into the taxpayer's bank account because they were made for specific purposes. Another witness testified that he had lent the taxpayer $300 or $400 during the year, mostly in small amounts of cash. With the exception of the $100 allowed the taxpayer as a loan, neither the witnesses nor the taxpayer could correlate any loan with the deposits. The taxpayer produced no records pertaining to the loans that he claimed.

■ The determination of whether the unexplained bank deposits constituted income presents a narrow factual issue. The commissioner's determination of a deficiency is presumed to be correct, and the taxpayer has the burden in the tax court of proving it wrong. O'Dwyer v. Commissioner of Internal Revenue, 266 F.2d 575, 588 (4th Cir.), cert. denied, 361 U.S. 862, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959). While an arbitrary assessment may destroy this presumption, e.g., Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623 (1935), we cannot accept the taxpayer's contention that the determination of the deficiency in this case was arbitrarily made. In the absence of records kept by the taxpayer showing the source of his cash receipts the Commissioner may look to other sources of information to establish income, and may take into account, as *prima facie* evidence of income, bank deposits made by the tax-

payer during the years in question." Boyett v. Commissioner of Internal Revenue, 204 F.2d 205, 208 (5th Cir. 1953). Under the circumstances, the tax court was not bound to find that the presumption accorded the commissioner's determination was overcome by the vague and indefinite testimony of the taxpayer. Factor v. Commissioner of Internal Revenue, 281 F.2d 100, 111 (9th Cir. 1960), cert. denied, 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961).

■ The commissioner conceded that some of the disputed deposits were not income. The tax court accepted the taxpayer's corroborated testimony with regard to another deposit. These circumstances, however, do not destroy the presumption supporting the commissioner's determination of the deficiency with respect to other items or demonstrate that his assessment was arbitrary. Marcello v. Commissioner of Internal Revenue, 380 F.2d 494, 497 (5th Cir. 1967); Banks v. Commissioner of Internal Revenue, 322 F.2d 530, 548 (8th Cir. 1963).

The judgment is affirmed.