ALLEN N. KEELER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JUANA I. KEELER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Keeler v. Commissioner
Docket Nos. 16155-90, 16156-90
United States Tax Court
T.C. Memo 1992-172; 1992 Tax Ct. Memo LEXIS 183; 63 T.C.M. (CCH) 2507; March 24, 1992, Filed *183 Decisions will be entered under Rule 155 and an order denying respondent's motion for damages will be issued. Allen N. Keeler and Juana I. Keeler, pro se. T. Richard Sealy III, for respondent. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' [1] Federal income tax and additions to tax for the years and in the amounts as follows: Allen N. Keeler - Docket No. 16155-90
Additions to Tax
Year
Deficiency
Sec. 6651
Sec. 6653
Sec. 6653
Sec. 6654
(a)(1)
(a)(1)
(a)(1)(A)
1985
$ 3,052
$   763
$ 153
$  38
1986
3,104
776
-- $ 155
150
1987
4,028
1,007
-- 201
217
1988
5,504
1,376
275
353
Juana I. Keeler - Docket No. 16156-90
Additions to Tax
Year
Deficiency
Sec. 6651
Sec. 6653
Sec. 6653
Sec. 6654
(a)(1)
(a)(1)
(a)(1)(A)
1985
$ 882
$ 221
$ 44
$  38
1986
850
213
--
$ 43
42
1987
1,136
284
--
57
61
1988
1,586
397
79
102
Respondent also determined an addition to tax pursuant to section 6653(a)(2) [2] for 1985 and section 6653(a)(1)(B) for 1986 and 1987 equal to 50 percent of the interest that is computed on the portion *184 of the underpayment which is attributable to negligence or intentional disregard of rules and regulations for each petitioner. The issues for decision are: (1) Whether and in what amounts petitioners have unreported income for each of the years 1985 through 1988; (2) whether petitioners are liable for additions to tax for failure to file income tax returns for each of the years 1985 through 1988; (3) whether petitioners are liable for the additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a)(1) for 1985, section 6653(a)(1)(A) for 1986 and 1987, section 6653(a)(2) for 1985, *185 and section 6653(a)(1)(B) for 1986 and 1987; (4) whether petitioners are liable for additions to tax for failure to pay estimated income tax for each of the years 1985 through 1988; and (5) whether a penalty under section 6673 should be imposed against each petitioner for instituting proceedings before this Court primarily for delay or based on a frivolous or groundless position. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Each petitioner resided in Corpus Christi, Texas, at the time of the filing of the petitions in this case. Neither petitioner filed income tax returns for the years here in issue. During 1984, Mr. Keeler was employed by Schwan's Sales Enterprises (Schwan's) as a route salesman, earning approximately $ 600 to $ 700 per week. He quit this position in March 1984 and, after 2 weeks of unemployment, began a window-washing business as a sole proprietor. Mr. Keeler conducted this window-washing business during all of the years here in issue. At the beginning of his window-washing business in 1984 he did not earn as much income from that work as he did in later years. His customers paid him for his window-washing services *186 both with cash and with checks. Approximately one-half of the amounts he received was by cash and the other half by checks. However, he did not deposit all of the checks which he received into his bank account but cashed some of the checks and used the proceeds to pay personal, family, and living expenses. Mr. Keeler wrote receipts for customers. During the years in issue, Mr. Keeler was the pastor of and operated the River of Life Baptist Church. Services were held twice on Sunday and on Wednesday evening. From 3 to 40 people would attend each service. Offerings were collected at the Sunday services. The amount of the offering would vary but averaged around $ 25 a Sunday including some amount contributed by Mr. Keeler. The church was attached to the front of the house where petitioners and their family resided. Mr. Keeler used the offering to pay utility bills and other expenses for the house. The River of Life Baptist Church had not applied for or received from the Internal Revenue Service an exemption of any kind from income tax. Petitioners did not pay any State, county, or local taxes on the house in which they and their family lived. Mr. Keeler's name was not on *187 the deed to the church or house. Petitioners paid no rent for living in the house. Mr. Keeler drove a car that was not registered in his name but with respect to which he had a document which he referred to as a power of attorney giving him all rights of ownership of the car. Petitioners produced no records of their income for any of the years 1985 through 1988 for respondent's agent. Respondent reconstructed petitioners' income based primarily on a bank deposits method. The deposits to petitioners' bank account at Coastal Bend National Bank for 1985 were in the amount of $ 13,867. To this amount, respondent added the amounts of $ 1,712 and $ 2,815 shown on Forms 1099 issued to petitioners by Frank Hill Janitorial and Dutch Girl Cleaning, respectively. Respondent determined petitioners' gross income for 1986 and 1987 to be the total deposits to their bank account at Coastal Bend National Bank for those years in the respective amounts of $ 18,326 and $ 23,509. Petitioners did not maintain any bank accounts during 1988. Respondent reconstructed petitioners' gross income for 1988 by projecting the percentage increase in petitioners' gross income from 1987 to 1988 to be the same *188 as the increase she had determined between 1986 and 1987, or 28 percent. Accordingly, respondent determined petitioners' gross income for 1988 to be $ 30,092. Because Texas is a community property State, respondent split the income earned by Mr. Keeler equally between the two petitioners and in addition determined a self-employment tax deficiency against Mr. Keeler for each year resulting in the deficiencies determined against Mr. Keeler being higher than the deficiencies determined against Mrs. Keeler. Petitioners' income for 1985 is $ 18,394, for 1986 is $ 18,326, for 1987 is $ 21,606, and for 1988 is $ 24,886. We determine that petitioners had deductible business expenses of $ 1,610 for 1985 and $ 610 for each of the years 1986, 1987, and 1988. Mr. Keeler's primary argument is that respondent does not have authority to determine a deficiency in his tax and that payment of income tax is voluntary. However, at the trial he offered evidence, which we will discuss in our opinion, designed to show that his income was less than the amounts determined by respondent and that respondent did not allow deductions for his business expenses, which he paid. On brief, petitioner also presents *189 these arguments. OPINION Petitioners contend that respondent has not shown a proper delegation of authority to her from the Secretary of the Treasury to permit her to determine an income tax against them because she has not shown that her delegation of authority was published in the Federal Register. Petitioners also argue that assessment and payment of income tax is voluntary and that they have not "volunteered" since they filed no returns. On numerous occasions this Court and other courts have found such arguments to be without merit. See Crain v. Commissioner, 737 F.2d 1417 (5th Cir. 1984), affg. an order of dismissal of this Court; Stamos v. Commissioner, 95 T.C. 624 (1990). Mr. Keeler testified that he kept no records of income or expenses of his window-washing business. When it developed from the testimony of his son that he did give receipts with copies, he testified that he threw those copies of receipts away as soon as he finished a book. The Commissioner is authorized by section 446(b) to reconstruct the income of a taxpayer who keeps no records or inadequate records or refuses to furnish his records to respondent in accordance *190 with such method as in her opinion clearly reflects that taxpayer's income. Cupp v. Commissioner, 65 T.C. 68, 82 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977). A bank deposits method, absent records, is proper for reconstruction of a taxpayer's income and the Commissioner's determination using such a method is presumptively correct. The taxpayer has the burden of showing that the determination is erroneous. Mills v. Commissioner, 399 F.2d 744, 749 (4th Cir. 1968), affg. T.C. Memo. 1967-67; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Mr. Keeler testified that a portion of the deposits in his bank account reflects money that had been earned by him in prior years during his employment with Schwan's. Mr. Keeler testified that he had saved between $ 10,000 and $ 14,000 during his employment with Schwan's and kept this money (savings) at his home in a jar or a video cassette box. He testified that sometimes he would deposit some of this already taxed money into his bank account to cover his checks. Mr. Keeler testified that he also used some of the money he had *191 saved from prior years to purchase groceries, pay normal expenses, and take his children to the movies. Mr. Keeler testified that all of the money he had saved from his wages from Schwan's was gone at the time of the trial but could not remember when it was exhausted. Mr. Keeler could not recall how much of his savings was used as cash to make purchases and how much was deposited to cover checks he had written. Mr. Keeler did not make any estimates or give any basis for determining how much of the savings may have been deposited into the checking account. Since the record shows that Mr. Keeler did not deposit all his earnings in his bank account, this record is insufficient to support a conclusion that any savings deposited would not be the same as or less than the income not deposited. Petitioners argue that the bank deposits method does not represent an accurate reflection of income inasmuch as Mr. Keeler engaged in the practice of writing checks for cash and depositing the cash in his bank account to cover previously written checks (check kiting). Petitioners argue that some of the amounts reflected in the bank deposit records represent cash deposited from checks written *192 to cover other checks and not income earned from Mr. Keeler's window-washing business. A review of the bank statements for the year 1987 does support this testimony of Mr. Keeler, but these statements do not support the testimony for other years. Mr. Keeler in his testimony indicated that this practice either started or became more pronounced in 1987. That Mr. Keeler's window-washing income may be overstated in 1987 is to some extent supported by the testimony of Mr. Keeler's son as to the earnings he saw his father make when he worked for him. Although the evidence is not precise, we conclude, based on all the evidence of record, that respondent correctly determined petitioners' income for 1985 and 1986 and that the increase in petitioners' income from 1986 to 1987 and from 1987 to 1988 is $ 3,280 each year. We therefore hold that petitioners' 1987 income is $ 21,606 and that their 1988 income is $ 24,886. In reaching our conclusion, we have considered that petitioners had some income from the River of Life Baptist Church as well as income from the window-washing business. We have considered the testimony of petitioners' son Jeremy as to his earnings when he occasionally worked *193 for his father starting at age 8 in 1985. Jeremy's testimony was that he got 10 percent of his father's earnings on days he worked for his father and that this amount would be $ 4 to $ 5 a day depending on whether he worked a full day. Mr. Keeler himself estimated that he made on the average about $ 55 a day, but the record as a whole does not support this estimate. We have also considered Mr. Keeler's testimony of days he could not work because of rain or illness. While it is reasonable to believe that occasionally Mr. Keeler could not work because of rain or illness, we give no weight to his estimate of the number of days each year he was unable to work, particularly since he was unable to state the year in which he was hospitalized. In the notice of deficiency respondent allowed petitioners no deductions for business expenses. Petitioners argue that when Mr. Keeler began the window-washing business in 1984, he purchased $ 300 of window cleaning equipment, $ 100 of radio advertising, and $ 16 of business cards. Mr. Keeler testified that on a weekly basis, he expended $ 25 for fuel for his automobile, $ 3 for ammonia, $ 2 for squeegee replacement blades, $ 20 for meals, $ *194 7.25 for automobile liability insurance, and approximately $ 25 per week for labor paid to his son, Jeremy. Because the 1984 year is not before us, it is not necessary for us to consider the amount of the expenditures Mr. Keeler incurred to begin his window-washing business unless some of these items should be capitalization and depreciation allowed in the years before us. There is nothing in this record to show that any of the expenditures in 1984 were capital in nature so that Mr. Keeler would be entitled to a deduction for depreciation in subsequent years. Based on the record, we find that petitioners expended in each of the years in issue the amount of $ 156 for ammonia and $ 104 for squeegee replacement blades and that these amounts are deductible business expenses. Sec. 162(a); Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Section 162(a)(2) allows a deduction for travel and meal expenses incurred while away from home in pursuit of a trade or business. None of the expenditures by Mr. Keeler for travel ormeals were incurred away from home but so far as this record shows were all incurred in the Corpus Christi area where he lived. Therefore, petitioners *195 are entitled to no expenses for meals and travel away from home. United States v. Correll, 389 U.S. 299 (1967); Commissioner v. Flowers, 326 U.S. 465 (1946). A deduction is allowed for all ordinary and necessary expenses paid in carrying on a trade or business. The expense of driving to and from work is a personal expense, the cost of which is not deductible by a taxpayer as a business expense. Commissioner v. Flowers, supra; Marot v. Commissioner, 36 T.C. 238 (1961). This is true even though the individual taxpayer is an independent contractor as distinguished from strictly an employee. Heuer v. Commissioner, 32 T.C. 947 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). Accordingly, any expenses incurred by Mr. Keeler in commuting to his first window-washing job and home from his last job would not be deductible. The cost of transportation from one business location to another is deductible as an ordinary and necessary business expense. Steinhort v. Commissioner, 335 F.2d 496, 504 (5th Cir. 1964), affg. T.C. Memo. 1962-233. *196 For the year 1985, petitioner is entitled to a business expense deduction for the cost of traveling between window-washing jobs to the extent he has shown the amount of such expense. Mr. Keeler did testify as to his estimate of his total automobile expense but not to the portion of those expenses allocable to transportation between jobs. On the record as a whole, we find that in 1985 Mr. Keeler incurred $ 1,000 in local transportation expenses traveling between window-washing jobs. Cohan v. Commissioner, supra.
For years after 1985, a deduction for transportation expenses is allowed only if the taxpayer meets the strict substantiation requirements of section 274(d). Sec. 274(d)(1); sec. 1.274-5T(a)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) for taxable years beginning after December 31, 1985, was amended to provide that no deduction shall be allowed with respect to any listed property as defined in section 280F(d) (4) -- unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) *197 the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift. * * *
Listed property as defined in section 280F(d)(4) includes any passenger automobile. The elements required to substantiate a claimed automobile expense deduction under section 274(d) as applicable to years beginning after December 31, 1985, include the amount of each separate expenditure with respect to an item of listed property, the amount of each business use based on the appropriate measure (mileage for automobiles), date of use, and business purpose of use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). To substantiate the deduction by means of adequate records, a taxpayer must maintain an account book, diary, log, statement of expense, trip sheets, or similar records, and documentary evidence which, in combination, are sufficient to establish each element of an expenditure or use. *198 Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). In general, to be adequate a record must be written and must be prepared or maintained in such a manner that each recording of an element of an expenditure or use that must be substantiated is made at or near the time of that expenditure or use. Sec. 1.274-5T(c)(2)(ii)(C)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46019 (Nov. 6, 1985). Other than Mr. Keeler's unsupported testimony, there is nothing in this record to establish any of the elements required to be proven for the cost of transportation with respect to listed property to be deductible. Mr. Keeler testified that he did not keep any records. Therefore petitioners have failed to substantiate the claimed automobile expenses for 1986, 1987, and 1988, and are entitled to no deduction for such expenses in these years. Both Mr. Keeler and his son, Jeremy, testified that Mr. Keeler paid an average of $ 25 a week to Jeremy for labor, and that Jeremy worked for Mr. Keeler approximately 4 months of every year. The fact that payments are made to a minor child by a related party does not preclude their deductibility. *199 Eller v. Commissioner, 77 T.C. 934, 962 (1981); Denman v. Commissioner, 48 T.C. 439, 448-451 (1967). We find that Jeremy did provide services to his father in the conduct of his father's trade or business. However, considering the fact that Jeremy did not always work 5 days a week or all days during his Christmas and spring vacation periods, we conclude that Jeremy worked for his father 14 weeks during each year in issue at an average of $ 25 a week or $ 350 a year. Therefore petitioners are entitled to a deduction of $ 350 for salary paid by Mr. Keeler to Jeremy for each of the years in issue. Sec. 162(a)(1). An addition to tax is imposed by section 6651(a)(1) for failing to timely file a return, unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. The addition is equal to 5 percent of the tax required to be shown on the return, with an additional 5 percent for each month or fraction of a month that the failure to file the return continues, up to a maximum of 25 percent. That a taxpayer believes no return is required is itself insufficient to show that the failure to file was due to reasonable *200 cause. Lawrence Block Co. v. Commissioner, 12 T.C. 366 (1949); P. Dougherty Co. v. Commissioner, 5 T.C. 791, 800 (1945), affd. 159 F.2d 269 (4th Cir. 1946). Petitioners have failed to show that their failure to file returns for each year in issue was due to reasonable cause and not willful neglect. Accordingly, the imposition of the addition to tax pursuant to section 6651(a)(1) for all the years in issue is sustained. An addition to tax is imposed by section 6653(a)(1) for 1985 and 1988 and section 6653(a)(1)(A) for 1986 and 1987 for negligence or intentional disregard of rules and regulations. The amount of this addition is 5 percent of the underpayment if any part of the underpayment is attributable to negligence or intentional disregard of rules and regulations. There is an additional amount, pursuant to section 6653(a)(2) for 1985 and section 6653(a)(1)(B) for 1986 and 1987, equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is defined as a lack of due care or failure to do that which a reasonable and prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), *201 affg. 79 T.C. 714 (1982). The burden is on petitioners to show error in respondent's determination of the additions to tax for negligence. They have made no such showing here. Petitioners negligently failed to keep records from which their income could be properly computed. Based on this record, we conclude that all underpayments of tax by petitioners are attributable to negligence. Accordingly, we sustain respondent's determination of additions to tax pursuant to section 6653(a)(1) and (2) for the year 1985, pursuant to section 6653(a)(1)(A) and (B) for the years 1986 and 1987, and pursuant to section 6653(a)(1) for the year 1988. Section 6654(a) provides for an addition to tax in the case of any underpayment of estimated tax by an individual unless one of the exceptions set forth in section 6654(d) is applicable. Petitioners have not shown that they fall within one of the exceptions. Accordingly, the imposition of the addition to tax pursuant to section 6654(a) is sustained for each of the years in issue. Section 6673(a)(1) provides that whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily *202 for delay, the taxpayer's position in such proceeding is frivolous or groundless, or the taxpayer unreasonably failed to pursue available administrative remedies, the Tax Court, in its discretion, may require the taxpayer to pay a penalty to the United States in an amount not in excess of $ 25,000. At the trial respondent filed a motion entitled "Motion for Damages" asking that we determine a $ 25,000 penalty against petitioners under section 6673(a)(1). Considering all the facts in this record, we exercise our discretion not to impose a penalty on petitioners under section 6673(a)(1) and will deny respondent's motion requesting that a penalty be imposed. Decisions will be entered under Rule 155 and an order denying respondent's motion for damages will be issued. Footnotes
1. Unless indicated otherwise, all references herein to "petitioners" will collectively refer to petitioners Allen N. and Juana I. Keeler, and all references to petitioner will refer to Allen N. Keeler. ↩
2. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩