T.C. Memo. 1999-24

UNITED STATES TAX COURT

ILYA G. AND SOPHIA K. MARGOLIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18606-97.                    Filed January 29, 1999.

Ilya G. and Sophia K. Margolis, pro sese.

<u>James R. Rich</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable year in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for 1992 in the amount of $4,141, as well as an accuracy-related penalty under section 6662(a) in the amount of $828. At trial, respondent asserted an increased deficiency and accuracy-related penalty in the amounts of $6,393 and $1,278, respectively. As discussed in further detail in this opinion, petitioners concede a portion of the increased deficiency.

After concessions by the parties, the issues for decision are:

(1) Whether petitioners failed to report self-employment income in the amount of $16,727. We hold that petitioners failed to report $14,191 of self-employment income.[2]

(2) Whether petitioners are entitled to certain Schedule C deductions. We hold that they are to the extent provided in the opinion.

(3) Whether petitioners are liable for the accuracy-related penalty under section 6662. We hold that they are to the extent provided in the opinion.

## FINDINGS OF FACT

Some of the facts have been stipulated, and are so found. Petitioners resided in Charlotte, North Carolina, at the time that their petition was filed with the Court.

---

[2] The disputed amount of unreported self-employment income is in addition to $14,180 of unreported self-employment income conceded by petitioners to have been received by Mrs. Margolis.

Petitioners are a married couple. Throughout the year in issue, petitioner-husband (Mr. Margolis) was self-employed as a photographer and petitioner-wife (Mrs. Margolis) was self-employed as a textile designer.

In June 1992 Mrs. Margolis became associated with Leo Art Studios, Inc. (Leo Art), located in Manhattan, New York. She received $14,180 from Leo Art in 1992 from the sale of her textile designs. Leo Art paid Mrs. Margolis by checks ranging in amount from $350 to $800. Mrs. Margolis deposited the first three checks she received from Leo Art, each in the amount of $500, to petitioners' account at National Westminster Bank. Mrs. Margolis cashed the remaining checks.

Petitioners resided in a three bedroom apartment in Kew Gardens, New York. One of the bedrooms was converted into a work area utilized exclusively by Mrs. Margolis throughout 1992 as a home office. Mrs. Margolis used the home office mainly to prepare her textile designs.

On their 1992 Federal income tax return, petitioners claimed a net Schedule C loss for Mr. Margolis' photography business in the amount of $11,121. Petitioners reported $13,621 in unemployment compensation income received by Mrs. Margolis. Petitioners did not report any income or claim any loss for Mrs. Margolis' textile design business.

In the notice of deficiency, respondent determined that petitioners failed to report $14,755 in self-employment income earned by Mrs. Margolis as a textile designer.

Further, using the bank deposits method of income reconstruction, respondent determined that petitioners received additional unreported self-employment income. Respondent determined that during 1992 petitioners deposited $42,964 to their bank account. Gross receipts from Mr. Margolis' business accounted for $12,918 of the deposits, and Mrs. Margolis' unemployment compensation accounted for $13,621 of the deposits. As for Mrs. Margolis' self-employment income from Leo Art (separately determined and therefore otherwise taxed), respondent determined that petitioners had deposited only $4,470 to their bank account. Respondent therefore determined that petitioners had additional unreported self-employment income in the amount of $11,955; i.e., $42,964 less $12,918, $13,621, and $4,470.

Initially, petitioners denied that Mrs. Margolis had received any self-employment income during the year in issue. Subsequently, but before trial in this case, petitioners submitted a "corrected" Form 1040[3] through which they conceded that Mrs. Margolis had received self-employment income in the amount of $14,180 from Leo Arts. In the corrected return, however, petitioners claimed that Mrs. Margolis had incurred $6,978 in Schedule C expenses, including an $890 mortgage interest expense[4] and a $4,502 home office expense.

_____

[3] The "corrected" Form 1040 was never actually filed with respondent.

[4] At trial it became apparent that petitioners actually intended to claim a deduction for an interest expense as opposed
(continued...)

In addition, in the corrected return petitioners decreased their personal exemptions by one, resulting in an increase in petitioners' taxable income in the amount of $2,300. Petitioners also submitted a "corrected" Schedule C for Mr. Margolis' business, conceding a $4,413 reduction in Schedule C expenses. As part of the claimed expenses in the corrected return, Mr. Margolis also claimed an $890 mortgage interest expense deduction.[5] Respondent allowed this $890 deduction for Mr. Margolis' business.

Subsequently, respondent conceded that Mrs. Margolis had received only $14,180 of unreported self-employment income from her textile design business, as opposed to $14,755 as determined in the deficiency notice, and that petitioners were entitled to $1,535 in Schedule C expense deductions for Mrs. Margolis' business. Respondent did not allow a deduction for the $890 mortgage interest expense for Mrs. Margolis' business or for the $4,502 home office expense.

At trial, respondent asserted an increase to petitioners' unreported income resulting from two different adjustments to respondent's bank deposits analysis. First, respondent's counsel determined that petitioners deposited only $1,500 of Mrs. Margolis' self-employment income, as opposed to $4,470 as

---

[4](...continued)
to a mortgage expense.

[5] It appears that petitioners similarly intended to claim a deduction for an interest expense as opposed to a mortgage expense.

determined in the notice of deficiency--resulting in an increase of $2,970 to unreported income. Second, respondent's counsel determined that petitioners' bank deposits during 1992 totaled $44,766, as opposed to $42,964 as determined in the notice of deficiency--resulting in an increase of $1,802 to unreported income.

## OPINION

### Issue (1)  Unreported Income

#### A.  General Principles of Law

Because the parties have agreed as to the amount of Mrs. Margolis' unreported self-employment income, we must only decide whether petitioners received additional unreported income as determined by respondent's bank deposits analysis. In deciding the issue, we keep in mind that at trial respondent asserted an increased deficiency, claiming the amount of the additional unreported income to be $16,727, as opposed to $11,955 as determined in the notice of deficiency.

We begin by referring to two principles of law.

First, it is well established that bank deposits are prima facie evidence of income, Mills v. Commissioner, 399 F.2d 744, 748 (4th Cir. 1968), affg. T.C. Memo. 1967-67; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977), and that the taxpayer bears the burden of proving that the Commissioner's determination of income based on the bank deposits method is erroneous. Clayton v. Commissioner, 102 T.C.

632, 645 (1994); <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  Therefore, petitioners bear the burden of proving that they did not receive additional unreported income in the amount of $11,955.

On the other hand, it is also clear that the Commissioner bears the burden of proving that the taxpayer is liable for any increased deficiency asserted by the Commissioner after issuance of the notice of deficiency.  See Rule 142(a); <u>Shaller v. Commissioner</u>, T.C. Memo. 1984-584, affd. per curiam without published opinion 813 F.2d 403 (4th Cir. 1986).  Thus, respondent bears the burden of proving the increase in the amount of unreported income from $11,955 to $16,727 (i.e., the $2,970 decrease in the amount of otherwise taxed deposits and the $1,802 increase in the amount of total deposits).

With these principles in mind, we turn to the matter before us.

B.  <u>Amount of Deposits From Previously Taxed or Nontaxable Sources</u>

Petitioners contend that respondent's determination is erroneous because the deposits in question consist of previously taxed or nontaxable amounts.  Specifically,  petitioners contend that the unexplained deposits partially represent a gift in the amount of $10,000 from Mr. Margolis' mother.  Petitioners further claim that they deposited more than 95 percent of Mrs. Margolis' self-employment earnings accounting for the remaining unexplained deposits.

To substantiate their claim regarding the $10,000 gift from Mr. Margolis' mother, petitioners rely solely on their own uncorroborated testimony. Petitioners did not produce any canceled checks or any other admissible evidence to prove their claim. We are not required to, and do not, accept petitioners' self-serving testimony. See Tokarski v. Commissioner, supra; Hawkins v. Commissioner, T.C. Memo. 1993-517, affd. without published opinion 66 F.3d 325 (6th Cir. 1995).

Similarly, petitioners rely principally on their own self-serving testimony to establish that they deposited over 95 percent of Mrs. Margolis' self-employment income to their account. Again, we do not find petitioners' self-serving testimony sufficient or particularly reliable in that regard. See Tokarski v. Commissioner, supra; Hawkins v. Commissioner, supra.

The record in this case contains many facts contrary to petitioners' testimony. We find it unnecessary to dissect painstakingly and analyze petitioners' testimony regarding the source of the unexplained deposits. See Hawkins v. Commissioner, supra. However, as an example we refer to an instance where we find petitioners' testimony to be inconsistent and improbable.

Petitioners testified as follows: Mrs. Margolis would cash each check--other than the first three--she received from Leo Art at Hanover Bank located in the Empire State Building on the day she received the check, usually on a Friday. Mrs. Margolis would

travel by subway to her home carrying cash ranging from $350 to $800. Mr. Margolis would then travel back to Manhattan on the following Monday to deposit 95 to 100 percent of the cash to petitioners' account at National Westminster Bank, also located in the Empire State Building. Apparently petitioners' reason for this practice was so that they would have cash available for their weekend expenditures.

We have reviewed petitioners' bank account statements and find that petitioners' testimony is not supported by their banking pattern. For instance, a number of the deposits claimed to be deposits of cashed checks are in the amount of $514. However, upon review of the record, it appears that the $514 deposits are actually deposits of unemployment compensation received by Mrs. Margolis. Respondent gave petitioners credit for Mrs. Margolis' unemployment compensation in the bank deposits analysis.

According to petitioners' 1992 return, Mrs. Margolis received $13,621 in unemployment compensation during that year. Based on the record, it appears that she received an initial 1 week payment of $257 ($514 ÷ 2) on January 6, 1992 (supported on the record by a deposit of $257 to petitioners' account on that day) and 26 biweekly payments of $514, making a total of $13,621 for that year. Thus, the $514 deposits are in fact deposits of unemployment compensation and not deposits of the proceeds of Mrs. Margolis' cashed checks.

Also, what is highly irregular is that petitioners continued the unsafe practice of carrying large sums of cash on the subway week after week, for more than a 6-month period even though petitioners claim that they did not use more than 5 percent of the cash on any given weekend.

On the other hand, we are not convinced that petitioners never deposited any portion of the $12,680 in cashed checks to their account. Respondent bears the burden of proving the $2,970 increase in the amount of the unexplained deposits. See Rule 142(a). In that regard, respondent must prove that petitioners did not deposit any portion of the cashed checks to their account. We do not think that respondent proved that matter. It is possible that petitioners deposited a portion of Mrs. Margolis' cashed checks to their account. We find, however, that such deposits would have been minimal and not close to 95 to 100 percent of the checks cashed. Therefore, using our best judgment, we conclude that petitioners deposited 20 percent--or $2,536--of Mrs. Margolis' $12,680 cashed checks to their account. Cf. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Buske v. Commissioner, T.C. Memo. 1998-29 (utilizing Cohan to determine amount of unreported income); Kale v. Commissioner, T.C. Memo. 1996-197 (utilizing Cohan to determine the amount of unreported income but bearing heavily against the party--the Commissioner-- upon whom the burden of proof rested); Alanis v. Commissioner, T.C. Memo. 1995-263 (holding that in cases of unreported income, it may be appropriate for the Court to make estimates of the

amount of income that the taxpayer has failed to report applying the Cohan principle); Smith v. Commissioner, T.C. Memo. 1993-548. Even given respondent's burden of proof with respect a portion of the amount at issue, we think any further adjustment would be unguided and unwarranted judicial largess. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

C. Total Deposits

Respondent also asserted an increased deficiency based on an increase in the amount of total bank deposits from $42,964 to $44,766.

At trial, respondent produced copies of petitioners' bank statements, and we are convinced that petitioners' total deposits for 1992 totaled $44,766. Contrary to petitioners' contention, petitioners' bank statements reflect that respondent did not take into account any cash advances from petitioners' cash reserve account to arrive at the $44,766 total deposit figure. Thus, respondent has satisfied the burden of proof in this regard. See Rule 142(a).

In view of the foregoing, we conclude that petitioners received $14,191 of unreported self-employment income.[6]

Issue (2) Schedule C Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled

---

[6] We note that this amount is in addition to the $14,180 of unreported self-employment income the receipt of which petitioners have already conceded.

to any deduction claimed.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  This includes the burden of substantiation.  <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Section 162(a) generally allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  The regulations promulgated under section 162 clarify that only those ordinary and necessary business expenses "directly connected with or pertaining to the taxpayer's trade or business" may be deducted.  Sec. 1.162-1(a), Income Tax Regs.  In addition, under section 262(a), no portion of the expenditures attributable to personal, living, or family expenses may be deducted.

We now apply these principles to the various expenses petitioners claimed on their Schedule C for 1992.

A.  <u>Home Office Deduction</u>

Section 280A narrows the general deductibility rule of section 162 when deductions are claimed for the expenses of a home office.  Sec. 280A(a).

Section 280A(a) denies deductions with respect to the use of a dwelling unit used by the taxpayer as a residence during the taxable year.  Section 280A(c), however, permits the deduction of expenses allocable to a portion of the dwelling unit that is used exclusively and regularly as "the principal place of business" for any trade or business of the taxpayer.  Sec. 280A(c)(1)(A).

A taxpayer's "principal place of business" is not simply an important or necessary place of business, but rather the "most important, consequential, or influential" one.  Commissioner v. Soliman, 506 U.S. 168, 174 (1993).

Petitioners are entitled to a deduction for a home office because Mrs. Margolis' principal place of business for her activities was her home office.  Mrs. Margolis spent the majority of her working time preparing designs at her home office. Preparing textile designs, the activity that Mrs. Margolis performed while at her home office, was of central importance to her trade or business as a textile designer.  Mrs. Margolis' principal place of business was her home office.  Further, Mrs. Margolis exclusively used the bedroom she used as a home office for her business activity.

Therefore, petitioners are entitled to a deduction for a home office expense.

Petitioners claim a deduction for 33 percent of the general expenses of their home based on a square footage ratio. Respondent contends that at a maximum petitioners are entitled to a deduction for 22.5 percent of the general expenses of their home.

As an initial matter, we must decide the general expenses allocable to petitioners' home.  On their corrected 1992 return, petitioners claimed that they incurred $13,641 in general home expenses during 1992.  At trial, Mr. Margolis testified that the $13,641 amount represented monthly rent of approximately $1,200.

We accept Mr. Margolis' testimony in this regard.  We are satisfied that petitioners incurred $13,641 in general home expenses during 1992.

Next, we decide the percentage of the total floor space in petitioners' home that was used for Mrs. Margolis' business. Petitioners' corrected 1992 return provides that petitioners resided in a 1,380 square-foot apartment and that the room Mrs. Margolis used as a home office was 450 square feet.  However, at trial, Mr. Margolis testified that in measuring his residence, he did not include such areas as the kitchen, the hallways, and the bathrooms.  He testified that the square footage of his residence including the excluded areas was more accurately about 2,000 square feet.

Based on the record, we find that Mrs. Margolis' home office comprised 22.5 percent (450 out of 2,000 square feet) of petitioners' residence.  Cf. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).  Petitioners are therefore entitled to a home office deduction in the amount of $3,069 (22.5 percent of $13,641).

B.  Interest Expense

Petitioners claim an $890 interest expense deduction for each of their businesses.  Respondent allowed the interest expense deduction for Mr. Margolis' business.  Respondent contends that Mrs. Margolis is not entitled to an additional $890 deduction because petitioners have failed to substantiate such an expense.  We agree with respondent.

Petitioners have failed to produce any evidence, except for their own self-serving testimony, for an interest expense deduction exceeding the $890 already allowed by respondent for Mr. Margolis' business. We conclude that petitioners are not entitled to the additional $890 interest expense deduction.

Issue (3)  Accuracy-Related Penalty

Finally, we consider whether petitioners are liable for a penalty under section 6662(a) for negligence or disregard of rules or regulations.

Section 6662(a) and (b)(1) provides that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, then there shall be added to the tax an amount equal to 20 percent of the amount of the underpayment that is so attributable. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

To the extent that petitioners have unreported self-employment income,[7] we hold that petitioners have failed to prove that they made a reasonable attempt to comply with internal revenue laws and acted with reasonable cause and in good faith. See sec. 6664(c)(1). Indeed, given our holding that petitioners failed to report a substantial amount of income, the evidence

---

[7] Petitioners' unreported net earnings from self-employment include the $14,191 amount as decided herein and the $14,180 amount as conceded by petitioners, less allowable deductions conceded by respondent or allowed herein.

supports the conclusion that petitioners did not make a reasonable attempt to comply with internal revenue laws and did not act with reasonable cause and in good faith.

We therefore sustain respondent's determination and hold that petitioners are liable for the accuracy-related penalty under section 6662(a) for the year in issue with respect to the underpayment attributable to their unreported net earnings from self-employment.

Conclusion

To reflect our disposition of the disputed issues, as well as the parties' concessions,

Decision will be entered under Rule 155.