T.C. Memo. 1999-191


UNITED STATES TAX COURT


RONALD D. AND SHIRLEY A. BLUSH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3637-98.                    Filed June 10, 1999.


<u>David A. Slacter</u>, for petitioners.

<u>William J. Gregg</u>, for respondent.


MEMORANDUM OPINION


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

---

[1]    Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the years in issue.
All Rule references are to the Tax Court Rules of Practice and
Procedure.

Respondent determined the following deficiencies and penalties with regard to petitioners' Federal income taxes:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1993 | $5,210 | $1,042 |
| 1994 | 4,145 | 829 |
| 1995 | 490 | 98 |

After concessions by respondent,[2] the issues remaining for decision are: (1) Whether petitioners received unreported taxable income in the amounts of $15,687 and $18,714[3] for 1993 and 1994, respectively, as shown by unexplained bank deposits made by them during those years; and (2) whether petitioners are liable for an accuracy-related penalty for each of the 1993 and 1994 taxable years, pursuant to section 6662(a).

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioners resided in New Market, Virginia.

---

[2] Respondent concedes the deficiency in tax and penalty determined for the 1995 tax year. Additional concessions are enumerated infra note 3.

[3] Respondent's determination that petitioners received unreported taxable income is reflected as adjustments to petitioners' Schedule C gross receipts for the tax years in issue. The amounts set forth above reflect concessions made by respondent (a reduction in gross receipts for 1993 and 1994 in the amounts of $450 and $4,904, respectively).

Background

Petitioner Ronald D. Blush (hereinafter petitioner) started his business as an independent building contractor in the spring of 1991. Previously, petitioner had worked as a maintenance director for the Potomac Conference Corp. (hereinafter Potomac). Petitioner suffered an on-the-job injury in 1986 while working for Potomac. Petitioner received $15,076.97 and $5,000 in 1990 and 1993, respectively, as a settlement of his worker's compensation claim.

Petitioners purchased land in Shenandoah County, Virginia, in 1983 for approximately $30,000. The property consisted of five lots, all of which were sold by petitioners during the years 1985 through 1988 for a total of $73,500. Petitioners received approximately $33,739 of these funds after satisfaction of the sole mortgage on the property. Petitioners deposited the funds directly into their bank account.

For the tax years in question, petitioners maintained four bank accounts--a joint checking account, a business checking account in the name of petitioner, a savings account in the name of petitioner, and a checking account in the name of petitioner Shirley A. Blush. Petitioners deposited $93,452 and $72,808 into their various bank accounts during 1993 and 1994, respectively.

Petitioners timely filed their 1993 and 1994 Federal income tax returns. Petitioners attached Schedules C, Profit or Loss

From Business, reporting $35,344 and $20,984 in gross receipts for 1993 and 1994, respectively. Upon examination of petitioners' tax returns, respondent's revenue agent concluded that, to some extent, petitioner's business was conducted in cash. Petitioners did not present adequate books or records to respondent's revenue agent pertaining to the income generated by petitioner's business. The revenue agent performed a bank deposits analysis of the tax years in issue to determine petitioners' income. A summary of the revenue agent's bank deposits analysis for 1993 and 1994 reflects the following:

### 1993

| | |
|---|---|
| Deposits to bank accounts | $93,452 |
| Less deposits from known sources | 77,315 |
| Total unexplained deposits | [1]16,137 |

### 1994

| | |
|---|---|
| Deposits to bank accounts | $72,808 |
| Less deposits from known sources | 49,190 |
| Total unexplained deposits | [1]23,618 |

[1] As previously indicated, respondent has made concessions reducing the amounts of unexplained deposits.

During the initial interview with petitioners' representative, the revenue agent inquired as to the amount of cash petitioners had on hand during the years in question. Petitioners' representative did not provide an answer. The revenue agent prepared an information document request that again inquired as to the amount of cash petitioners had on hand. Petitioners responded that they did not know how much cash they

had on hand.  During the course of the examination, the revenue agent was not informed of the prior real estate transactions.  In addition, petitioners did not come forward with the explanation that some of the unexplained deposits were due to cash on hand.

In the preparation of his report, the revenue agent assumed that the unexplained deposits were unreported income, and the unreported income was attributable to petitioner's contracting business.  Respondent asserts (after concessions) that petitioners had unreported income as shown by unexplained bank deposits in the amounts of $15,687 and $18,714 during 1993 and 1994, respectively.

Discussion

1.  Unreported Income

Gross income includes all income from whatever source derived.  See sec. 61(a).  Section 6001 requires all taxpayers to maintain adequate books and records of taxable income.  In the absence of adequate records, the Commissioner is authorized to reconstruct a taxpayer's income by any reasonable method that clearly reflects the taxpayer's income.  See sec. 446(b); see also Holland v. United States, 348 U.S. 121, 130-132 (1954); Williams v. Commissioner, 999 F.2d 760 (4th Cir. 1993), affg. T.C. Memo. 1992-153; Parks v. Commissioner, 94 T.C. 654, 658 (1990); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965).  One of these methods, the bank deposits and cash expenditure method,

has long been sanctioned by the courts. See <u>Clayton v. Commissioner</u>, 102 T.C. 632, 645 (1994).

Bank deposits are prima facie evidence of income. See <u>Mills v. Commissioner</u>, 399 F.2d 744, 749 (4th Cir. 1968), affg. T.C. Memo. 1967-67; <u>Clayton v. Commissioner</u>, <u>supra</u> at 645; <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986). When the Commissioner uses the bank deposits method of analysis to reconstruct a taxpayer's income, this method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income. The Commissioner must take into account any nontaxable source or deductible expense of which he has knowledge. See <u>Clayton v. Commissioner</u>, <u>supra</u> at 646; <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

Petitioners contend that the funds deposited into their bank accounts are not taxable income. Petitioners assert the funds came from a cash hoard comprising gain from prior real estate transactions and worker's compensation settlements.

Petitioner testified that he did not particularly like banks, and he wanted to have more control over his money. He testified that, while he deposited funds, he sometimes withdrew funds and held the cash. Petitioner attributed his distrust of banks to "Black Friday" (a date in October 1987 when the stock market experienced a severe decline). Petitioner testified that

he began depositing his cash reserves when he started his business in 1991.

Petitioner did not keep any records of how much cash he kept at home or how much he had in his possession at any given time. Petitioners could not adequately explain where the cash was kept. Although petitioners testified that cash from real estate transactions and from worker's compensation settlements was withdrawn from the bank and kept at home, the testimony was not specific as to the dates or amounts. In addition, petitioner testified that some portion of his business was conducted in cash and that some household bills were paid in cash. Again, the testimony was vague. The Court is not required to accept unsubstantiated testimony. See Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). We hold that petitioner's explanation of a cash hoard (nontaxable source) is not credible. We are further satisfied that respondent gave petitioners proper credit for all nonincome sources of deposits. We sustain respondent's determination, taking into consideration respondent's concessions.

## 2. Section 6662(a)

Respondent determined petitioners were liable for the accuracy-related penalty under section 6662(a) for both 1993 and 1994. The accuracy-related penalty is equal to 20 percent of any portion of an underpayment of tax required to be shown on the

return that is attributable to the taxpayer's negligence or disregard of rules or regulations. See sec. 6662(a) and (b)(1). "Negligence" consists of any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c). "Disregard" consists of any careless, reckless, or intentional disregard. Id.

An exception applies to the accuracy-related penalty when the taxpayer demonstrates (1) there was reasonable cause for the underpayment, and (2) he acted in good faith with respect to such underpayment. See sec. 6664(c). Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances. The most important factor is the extent of the taxpayer's effort to assess the proper tax liability. See Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs. Section 1.6664-4(b)(1), Income Tax Regs., specifically provides:

> Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer. * * *

It is the taxpayer's responsibility to establish he is not liable for the accuracy-related penalty imposed by section 6662(a). See Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989). Petitioners failed to explain adequately why they did not report all of their taxable income for 1993 and 1994. On the basis of the entire record, we conclude that

petitioners have not established that the underpayment of tax was due to reasonable cause and that they acted in good faith. Accordingly, we hold petitioners are liable for the accuracy-related penalty.  On account of respondent's concession, the penalty will be in an amount less than that determined in the notice of deficiency.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.